COPY

ORIGINAL
FILED

APR 1 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Jonathan D. Selbin (State Bar No. 170222)
    jselbin@lchb.com
2   Kristen E. Law (State Bar No. 222249)
    klaw@lchb.com
3   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    Embarcadero Center West
4   275 Battery Street, 30th Floor
    San Francisco, CA  94111-3339
5   Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008
6
7   David P. Meyer (Ohio Bar # 0065205) (*pro hac vice* to
    be filed)
    dmeyer@dmlaws.com
8   Matthew R. Wilson (Ohio Bar #0072925) (*pro hac vice*
    to be filed)
9   mwilson@dmlaws.com
    DAVID P. MEYER & ASSOCIATES, CO., LPA
10  1320 Dublin Road, Ste. 100, Columbus, Ohio 43215
    Tel: (614) 224-6000
11  Fax: (614) 224-6066

12  Attorneys for Plaintiff and the Proposed Class

13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16

17  ARTHUR FULFORD, on behalf of himself        Case No. 08 2041
    and all others similarly situated,
18                                              **CLASS ACTION COMPLAINT**
                    Plaintiff,
19                                              **(1) CONSUMER LEGAL REMEDIES ACT;**
    v.
20                                              **(2) BUSINESS & PROFESSIONS CODE**
    LOGITECH, INC., a California                **SECTIONS 17200 & 17500**
21  corporation, and DOES 1-100, inclusive,
                                                **(3) EXPRESS WARRANTY;**
22                  Defendants.
                                                **(4) DECEIT/COMMON LAW FRAUD; and**
23
                                                **(5) UNJUST ENRICHMENT**
24
                                                **DEMAND FOR JURY TRIAL**
25

26

27

28

    756825.2
    758927.2

Plaintiff Arthur Fulford ("Plaintiff," "Representative Plaintiff, or "Named Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge and on information and belief as follows:

## INTRODUCTION

1.      Plaintiff brings this action for actual damages, equitable relief (including restitution, injunctive relief, and disgorgement of profits), and all other relief available on behalf of himself and all similarly-situated individuals and entities who own or have owned a Harmony 1000 Advanced Universal Remote ("H1000 Remote"), which was marketed, distributed and sold by defendant Logitech, Inc. ("Logitech") (the "Proposed Class").

2.      All of the claims asserted herein arise out of Logitech's material and affirmative misrepresentations regarding the performance capability of the H1000 Remotes.

3.      Logitech advertised and marketed the H1000 Remote as having a primary feature—Z-Wave technology—that it does not have. Z-Wave is a wireless method, which uses radio frequency ("RF") technology, that Logitech claimed could be used to, among other things, "command lighting devices and other such devices." Z-Wave is a highly desirable feature that commands a premium price.

4.      Logitech knew or should have known the true limited functionality of the H1000 Remotes, but failed to remove them from the marketplace, change its marketing materials, or take adequate remedial action. Rather, Logitech sold the H1000 Remotes knowing that, contrary to the promises Logitech made in its marketing materials, the H1000 Remotes lacked the Z-Wave feature.

5.      As a consequence of Logitech's false and misleading statements regarding the quality and capability of the H1000 Remotes, Plaintiff and the Proposed Class purchased and currently own H1000 Remotes that do not and cannot perform as promised. As a result of Logitech's false advertising, Plaintiff and the Proposed Class have incurred monetary damages and suffered loss of use and value of their H1000 Remotes.

**THE PARTIES**

6.     Representative Plaintiff Arthur Fulford was and is a resident of the State of Florida. Fulford purchased an H1000 Remote in or about late February 2008.

7.     Defendant Logitech, Inc. is a California corporation that is headquartered in Fremont, California.

8.     The true names and capacities, whether individual, corporate, associate, representative or otherwise, of the defendants identified herein as Does 1 - 100 inclusive are unknown to Plaintiff, who therefore sues these defendants by said fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of Does 1 - 100 when they have been ascertained. Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named Doe defendants is in some manner legally responsible for the wrongs and injuries alleged in this complaint to have been suffered by Plaintiff and the Proposed Class and all allegations against Logitech are alleged against Does 1 -- 100.

9.     Plaintiff is informed and believes and based thereon alleges that all defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners, alter egos and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, alter ego, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants.

**JURISDICTION AND VENUE**

10.     This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) there are 100 or more members in the Plaintiff's proposed class; (2) at least some members of the proposed class have a different citizenship from Logitech; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

11.     This court has personal jurisdiction over Logitech because Logitech is a corporation headquartered in California and has purposefully availed itself of the privilege of

1  conducting business activities within the State of California by manufacturing, warranting,

2  advertising and selling H1000 Remotes to Plaintiff and the Class members and, further, generally

3  maintained systematic and continuous business contacts with the State of California.

4          12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a

5  substantial part of the events, misrepresentations and/or omissions giving rise to Plaintiff's claims

6  occurred in the Northern District when Logitech sold, marketed, distributed and/or warranted—

7  and Plaintiff purchased—one or more of the H1000 Remotes at issue here.

8                      **APPLICATION OF CALIFORNIA LAW**

9          13.    California law applies to the claims and issues asserted herein.  Plaintiff,

10  who asserts his claims against Logitech, a California corporation, seeks damages and equitable

11  relief on behalf of himself and all other persons and entities similarly situated, under the laws of

12  the State of California.

13          14.    California has significant contacts and/or a significant aggregation of

14  contacts to the claims asserted by Plaintiff and all Class members.

15          15.    California has a materially greater interest than any other State in enforcing

16  the rights and remedies granted to California consumers under the California laws invoked in this

17  Complaint.  These rights and remedies further strong fundamental public policies of the State of

18  California.

19                          **FACTUAL ALLEGATIONS**

20                            **Fulford's Experience**

21          16.    Mr. Fulford owned a more expensive and complex universal remote prior

22  to purchasing the H1000.  Although he liked some of the features of the more expensive remote,

23  Mr. Fulford's device lacked the Z-Wave feature.  Mr. Fulford wanted the Z-Wave feature in his

24  new remote.  After researching the Logitech website, Mr. Fulford decided that the Logitech

25  H1000 Remote would best suit his needs, largely because Z-Wave was on of the advertised

26  features of the H1000 Remote.  Mr. Fulford purchased an H1000 Remote in late February 2008.

27          17.    After purchasing the H1000, Mr. Fulford also purchased Z-Wave

28  compatible accessories to be used with the H1000.  It was not until he attempted to set up the

756825.2
758927.2                              - 3 -

1    device and use the Z-Wave accessories that he realized the remote was not operating as specified

2    on Logitech's website.  Mr. Fulford then returned to the Logitech website to confirm that he was

3    not mistaken about the Z-Wave functionality and found that the feature was still clearly listed.

4         18.    After visiting the Logitech website, Mr. Fulford sent an email to

5    Logitech's customer service address, listed on their website, inquiring as to the problem he was

6    experiencing. Logitech never responded.  Hearing no response, Mr. Fulford began to research the

7    issue online and found that he was not the only consumer frustrated by the lack of Z-Wave and

8    determined that, like other consumers he was encountering, he was stuck with a Universal

9    Remote that did not meet the specifications touted by the company that sold it.

10        19.    To date, Mr. Fulford has still not received a response from Logitech and is

11   still unable to use the remote as he intended.  Mr. Fulford therefore has and continues to be

12   damaged by Logitech's misrepresentations.

13                          **Logitech's Misconduct.**

14        20.    Logitech develops, produces, markets, and supports personal interface

15   devices for personal computers (PCs) and other digital platforms.  Its personal peripheral products

16   include: PC navigation devices, such as corded and cordless mice, trackballs and keyboards, and

17   3D control devices; Internet communication devices, such as Webcams and headsets; digital

18   music devices, including speakers, headphones, and wireless music systems; advanced remote

19   controls for home entertainment control; and interactive gaming devices, such as joysticks,

20   gamepads, steering wheels, and keyboards for PCs, as well as accessories for game consoles.  The

21   company sells its products through a network of retail distributors and resellers, including

22   wholesale distributors, consumer electronics retailers, mass merchandisers, specialty electronics

23   stores, computer and telecom stores, value-added resellers, and online merchants, as well as

24   original equipment manufacturers.

25        21.    Logitech also manufactures, warrants, markets, advertises and sells

26   Universal Remotes and related products and services, such as the H1000 Remotes at issue in this

27   case.

28

22.    All of Logitech's misconduct alleged herein emanated from and was directed from California.

23.    The H1000 Remotes do not perform as Logitech promised. Despite Logitech's representations that the H1000 Remotes have the Z-Wave feature, the H1000 Remotes do not have Z-Wave technology.

24.    Logitech failed to ensure that the H1000 Remotes would perform as promised, and/or knew or was reckless in not knowing, before it warranted, advertised, marketed and sold the H1000 Remotes to Plaintiff and the Proposed Class that the H1000 Remotes did not and cannot deliver Z-Wave technology.

25.    Logitech falsely represented, through its marketing and advertising: (a) that the H1000 Remotes had characteristics that they did not and do not actually have; (b) that the H1000 Remotes were of a certain quality or standard when they were not; and (c) that the H1000 Remotes were of merchantable quality when they were not.

26.    H1000 Remotes do not and cannot deliver the promised performance and/or are not of merchantable quality, contrary to the manner in which they were warranted, marketed and advertised by Logitech.

27.    As a result of Logitech's misconduct, Plaintiff and the Proposed Class have incurred significant damages in that the H1000 Remotes they own do not and cannot deliver Z-Wave performance. Because no upgrade is available to install the Z-Wave feature into the H1000 Remotes, Plaintiff and Class Members who want the Z-Wave feature Logitech promised have no choice but to replace their H1000 Remote with a different premium device.

### Plaintiff's And Class Members' Expectations and Experiences

28.    When he purchased his H1000 Remote, Plaintiff Fulford reasonably expected his H1000 Remote to have the Z-Wave technology Logitech promised and that the H1000 Remote would function properly for at least five (5) years without the need to expend additional money to obtain the promised features and/or expected useful life.

1    29.    Reasonable consumers expect that high-end universal remote control

2    devices like the H1000 Remotes will have the promised features and will function properly for

3    many years.

4    30.    Because the H1000 Remotes do not have the promised Z-Wave

5    technology, Plaintiff did not get what he paid for and incurred actual damages.

6    31.    Plaintiff's experiences are by no means isolated or unique. Numerous

7    essentially identical complaints with respect to H1000 Remotes can be found all over the internet.

8    The following messages are just a few verbatim excerpts from various web forums:

9
        If you are planning to have control with Z-wave as Logitech
10      Harmony H1000 promotes, DO NOT PURCHASE THIS ITEM, it
        does not control Z-wave devices, too expensive for only audio /
11      video devices control.[1]

12                              * * *

13      I just got off the phone with the Logitech helpdesk and they
        informed me that they have decided to not offer the ability for the
14      Harmony 1000 to control zwave lighting. Even though it was
        advertised as such it will NOT control zwave products.[2]

15                              * * *

16      I also bought the 1000 for the ZWAVE support many months ago
        when it first came out. I too have been extremely upset with
17      Logitech and have given up about the 1000 using ZWAVE. I see
        that it is confirmed they wont fix it by the above post. I will be
18      selling my 1000 on eBay because of this and wasn't going to buy
        another Logitech product due to false advertisement.[3]
19
                                * * *
20
        I am very upset about Logitech's announcem[en]t to drop z-wave. I
21      have had my Harmony 1000 since March    right when it became
        available. I have suffered through the early firmware and
22      connectivity problems in setting up the remote with my system.
        Whenever I inquired about z-wave with tech support, I was told the
23

---

24  [1] http://www.amazon.com/gp/product/customer-reviews/B000II6YEA/sr=8-
        1/qid=1185567802/ref=cm_cr_dp_synop/002-9850217-
25      8347235?ie=UTF8&m=A1J7WSBJHTGUFA&n=172282&s=electronics&customer-
        reviews.start=1&qid=1185567802&sr=8-1#R175ET8G0OARGN

26  [2] http://www.amazon.com/gp/product/customer-reviews/B000II6YEA/sr=8-
        1/qid=1185567802/ref=cm_rev_next/002-9850217-8347235?ie=UTF8&customer-
27      reviews.sort%5Fby=-SubmissionDate&n=172282&s=electronics&customer-
        reviews.start=21&me=A1J7WSBJHTGUFA&qid=1185567802&sr=8-1

28  [3] http://www.avsforum.com/avs-vb/showthread.php?p=10625125#post10625125

software was soon to come. I bought the RF extender from Logitech (which works great) specifically to work with the z-wave lighting control[]s - once the software came out. Now I'm told I've invested $650 and countless hours with tech support only to NOT have z-wave? This is an outrage and Very deceptive on Logitech's part. I bought the Harmony 1000 remote in part because of It's z-wave compatibility. Period. What's the point of having a "high end" remote if it doesn't perform as expected and promoted?[4]

\*    \*    \*

### Logitech's Knowledge Regarding The Limited Functionality of the H1000 Remotes

32.    Before it sold the first unit, Logitech knew, or was reckless in not knowing, that H1000 Remotes did not have Z-Wave technology, despite Logitech's promises to the contrary.

33.    Logitech also was made aware of the true limited functionality of the H1000 Remotes through numerous consumer complaints. Because of the Logitech's failure to resolve this widespread problem, consumers have taken to posting their complaints on the internet. Excerpts from various websites are included in Paragraph 31 above.

34.    Logitech is and has been aware of the scope of the problems with the H1000 Remotes but has failed to take corrective action. Instead, Logitech has responded by denying consumer complaints and has sought to "run out the clock" on the warranties that accompanied the H1000 Remotes. Logitech has failed to even notify its customers of the problems or advise them that their H1000 Remotes do not have the Z-Wave technology Logitech promised.

35.    To this day, Logitech disclaims any responsibility for the fact that the H1000 Remotes do not provide the promised Z-Wave technology:

I apologize for not previously posting a response to this discussion thread. This delay in posting may have caused some confusion regarding Z-Wave lighting capabilities of the Harmony 1000 and so I would like to clarify the situation by offering an official response on behalf of Logitech.

The Logitech Harmony 1000 was announced in September 2006 at CEDIA. Although Z-Wave lighting was never formally announced,

---

[4] http://forums.logitechio.com/logitech/board/message?board.id=general_remotes&thread.id=4695

the plan at that time was to have full Z-wave support of third-party Z-Wave Modules. Since that date Logitech has made the decision not to offer control of Z-Wave compatible lighting and home automation equipment for the Harmony 1000 remote. The company is focused instead on improving the interaction with the Harmony 1000 as it relates to the control of audio & video entertainment devices.

Z-Wave lighting control will continue to be supported for the Harmony 890, Harmony 895 & Harmony 890 Pro remote control.

Kindest Regards,

The Harmony Support Team[5]

**Affirmative Statements Regarding Product Characteristics**

36.    Logitech has made affirmative statements and partial misrepresentations about the H1000 Remotes.

37.    Logitech's website described the H1000 Remote as having the Z-Wave feature.[6]

38.    Logitech's marketing documents also touted the H1000 Remote's Z-Wave feature:

Using radio frequency (RF) technology, the Harmony 1000 remote can also control multi-room entertainment systems and high-end components hidden behind closed doors.[7]

*          *          *

[H1000 Remote] owners can eliminate clutter by placing audio-visual equipment components and their cumbersome cables out of sight. Because the remote transmits both infrared (line of sight) and radio frequency (RF) commands, it's easy to control equipment inside a cabinet or even in an adjacent room. The RF capability of the Harmony 1000 remote is based on the new Z-Wave home-automation standard. Z-Wave technology enables people to command lighting controls and other such devices that are Z-Wave compatible.[8]

---

[5]http://forums.logitechio.com/logitech/board/message?board.id=general_rem otes&thread.id=4695

[6] *See* website screenshot from http://www.logitech.com/index.cfm/remotes/universal _remotes/&cl=us,en&page=&view=comparison&compProducts=373,374, attached hereto as Exhibit A.

[7] *See* Logitech Press Release dated September 12, 2006, attached hereto as Exhibit B.

[8] See Harmony 1000 Reviewer's Guide, § 1.5, attached hereto as Exhibit C.

**Fraudulent Concealment Allegations**

39.    Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Logitech responsible for disseminating false and misleading marketing materials regarding the Z-Wave capability of the H1000 Remotes.  Logitech necessarily is in possession of all of this information.

40.    Plaintiff's claims arise out of Logitech's affirmative misrepresentations and fraudulent concealment of the true limited functionality of the H1000 Remotes.  To the extent that Plaintiff's claims arise from Logitech's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claims.  He alleges that at all relevant times, including specifically at the time he purchased his H1000 Remote, Logitech knew, or was reckless in not knowing, of the limited functionality of the H1000 Remotes; Logitech was under a duty to disclose the limited functionality based upon its exclusive knowledge of it, its affirmative representations about it, and its concealment of it; and Logitech never disclosed the true performance capabilities of the H1000 Remotes to the Plaintiff or anyone at any time or place or in any manner.

41.    Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Logitech:

a.    *Who*:  Logitech misrepresented that H1000 Remotes had and have Z-Wave technology when they really did not and do not and cannot, and concealed the true performance capabilities of the H1000 Remotes from Plaintiff, the Class, and everyone in the chain of distribution.  Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those individuals at Logitech responsible for such decisions.

b.    *What*:  Logitech knew, or was reckless or negligent in not knowing, that the H1000 Remotes do not have the Z-Wave technology Logitech promised.  Logitech affirmatively misrepresented the performance capabilities of the H1000 Remotes and concealed their true limited functionality.

c.    *When*:  Logitech affirmatively misrepresented and concealed material information regarding the existence of Z-Wave technology in the H1000 Remotes at all

1  times, starting no later than December 2006, continuing through the time of sale, and on an

2  ongoing basis, and continuing to this day. Logitech did not disclose the truth about the lack of Z-

3  Wave technology in the H1000 Remotes to anyone outside of Logitech until at least November of

4  2007. Logitech has never taken any action to inform consumers about the true limited

5  functionality of the H1000 Remotes.

6         d.      *Where*: Logitech affirmatively misrepresented and concealed

7  material information regarding the existence of Z-Wave technology in the H1000 Remotes in

8  every communication it had with Plaintiff, the Class, and everyone in the chain of distribution

9  until at least November 2007. Plaintiff is aware of no document, communication, or other place

10  or thing, in which Logitech disclosed the truth about the lack of Z-Wave technology in the H1000

11  Remotes to anyone outside of Logitech until at least November 2007. Such information appears

12  in no sales documents, no displays, no advertisements, no warranties, no owner's manual, nor on

13  Logitech's website.

14         e.      *How*: Logitech affirmatively misrepresented and concealed this

15  material information by promising in its marketing materials that H1000 Remotes have Z-Wave

16  technology that they do not have, and actively concealing the truth about the existence of Z-Wave

17  technology from Plaintiff, the Class, and/or anyone in the chain of distribution at any time or

18  place or in any manner until at least November 2007, even though it knew this information and

19  knew that it would be important to a reasonable consumer.

20         f.      *Why*: Logitech affirmatively misrepresented and concealed this

21  material information about the existence of Z-Wave technology for the purpose of inducing

22  Plaintiff and Class members to purchase the H1000 Remotes and at full price, rather than

23  purchasing competitors' remote control devices or paying Logitech less for the H1000 Remote.

24  Had Logitech disclosed the truth, Plaintiff (and reasonable consumers) would not have bought the

25  H1000 Remotes, or would have paid less for them.

26                        **STATUTES OF LIMITATION**

27         42.    **Discovery Rule**  The causes of action alleged herein accrued upon

28  discovery that the H1000 Remotes uniformly lack Z-Wave technology. Because Logitech

1   represented to Plaintiff and the Proposed Class that all H1000 Remotes had Z-Wave technology

2   as a standard feature, Plaintiff and members of the Class did not discover and could not have

3   discovered that all H1000 Remotes lack the Z-Wave feature through reasonable and diligent

4   investigation.

5       43.  **Fraudulent Concealment Tolling**  Any applicable statutes of limitation

6   have been tolled by Logitech's knowing and active concealment and denial of the facts as alleged

7   herein, which concealment is ongoing.  Plaintiff and the Class have been kept ignorant by

8   Logitech of vital information essential to the pursuit of these claims, without any fault or lack of

9   diligence on their part.  Plaintiff and members of the Class could not reasonably have discovered

10  that H1000 Remotes uniformly lack the Z-Wave feature.

11      44.  **Estoppel**  Logitech was and is under a continuous duty to disclose to the

12  Plaintiff and the Class the true character, quality, and nature of the H1000 Remotes.  Logitech

13  knowingly and affirmatively misrepresented and actively concealed the true character, quality,

14  and nature of the H1000 Remotes.  Plaintiff reasonably relied upon Logitech's knowing and

15  affirmative misrepresentations and/or active concealment.  Based on the foregoing, Logitech is

16  estopped from relying on any statutes of limitation in defense of this action.

17                    **CLASS ACTION ALLEGATIONS**

18      45.  Plaintiff brings this lawsuit as a class action on behalf of himself and all

19  others similarly situated as members of a proposed plaintiff Class pursuant to Federal Rule of

20  Civil Procedure 23.  This action satisfies the ascertainability, numerosity, commonality,

21  typicality, adequacy, predominance and superiority requirements of those provisions.

22      46.  Excluded from the Class are (1) Logitech, any entity in which Logitech has

23  a controlling interest, and its legal representatives, officers, directors, employees, assigns and

24  successors; (2) the judge to whom this case is assigned and any member of the judge's immediate

25  family; (3) persons or entities who distribute or resell the H1000 Remotes, and (4) claims for

26  personal injury, wrongful death and/or emotional distress.

27

28

### Numerosity & Ascertainability

47.    On information and belief, the Class is comprised of thousands of owners of H1000 Remotes throughout the United States, making joinder impractical.

48.    The Class is composed of an easily ascertainable, self-identifying set of individuals and entities who purchased H1000 Remotes.

### Community of Interest

49.    There is a well-defined community of interest among the Class members, and the disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

### Typicality

50.    The claims of the representative Plaintiff are typical of the claims of the Class, in that the representative Plaintiff, like all members of the Class, owns an H1000 Remote. The factual bases of Logitech's misconduct are common to all Class members and represent a common thread of fraudulent misconduct resulting in injury to all members of the Class.

### Predominance of Common Issues

51.    There are numerous questions of law and fact common to all Class members, and those questions predominate over any questions that may affect only individual Class members.

52.    The predominant common questions include the following:

a.    Whether the H1000 Remotes do not and cannot perform as promised;

b.    Whether the H1000 Remotes are not of merchantable quality;

c.    Whether the fact that H1000 Remotes do not have the promised Z-Wave technology is a material fact reasonable purchasers would have considered in deciding whether to purchase the H1000 Remote;

d.    Whether Logitech knew and/or was reckless or negligent in not knowing of the limited functionality of the H1000 Remotes;

1          e.    Whether Logitech affirmatively misrepresented to Plaintiff and the

2    Class the true performance capabilities of the H1000 Remotes;

3          f.    Whether Logitech had a duty to Plaintiff and the Class to disclose

4    the true limited functionality of the H1000 Remotes;

5          g.    Whether Logitech's misrepresentations regarding the true

6    performance capabilities of the H1000 Remotes induced Plaintiff and the Class to act to their

7    detriment by purchasing H1000 Remotes;

8          h.    Whether Logitech represented, through its words and conduct, that

9    the H1000 Remotes had characteristics, uses or benefits that they did not actually have, in

10   violation of the Consumer Legal Remedies Act ("CLRA");

11         i.    Whether Logitech represented, through its words and conduct, that

12   the H1000 Remotes were of a particular standard, quality or grade when they were of another, in

13   violation of the CLRA;

14         j.    Whether Logitech advertised the H1000 Remotes with the intent

15   not to sell them as advertised, in violation of the CLRA;

16         k.    Whether Logitech's affirmative misrepresentations about the true

17   nature of the H1000 Remotes was likely to mislead or deceive, and therefore fraudulent, within

18   the meaning of Bus. & Prof. Code § 17200, *et seq.*

19         l.    Whether Logitech's affirmative misrepresentations about the true

20   nature of the H1000 Remotes were and are unfair within the meaning of Bus. & Prof. Code

21   § 17200, *et seq.*

22         m.    Whether Logitech's warranties, marketing, advertisements and

23   other express representations that the H1000 Remotes had certain characteristics and/or were of a

24   certain quality or standard violated Bus. & Prof. Code § 17500, *et seq.*;

25         n.    Whether Logitech should be declared financially responsible for

26   notifying all Class members of the true limited functionality of the H1000 Remotes and for the

27   costs and expenses of replacing the H1000 Remotes with devices that have all of the promised

28   features of the H1000 Remotes, including Z-Wave technology;

1        o.     Whether Plaintiff and the Class are entitled to compensatory

2    damages, and the amount of such damages;

3        p.     Whether, as a result of Logitech's fraud, Plaintiff and the Class are

4    entitled to civil penalties and/or punitive damages, and the amount of such damages;

5        q.     Whether Logitech should be enjoined from engaging in the

6    methods, acts or practices alleged herein; and

7        r.     Whether Logitech should be ordered to disgorge, for the benefit of

8    the Class, all or part of its ill-gotten profits received from the sale of the H1000 Remotes.

9                                **Adequacy**

10       53.    Plaintiff will fairly and adequately represent and protect the interests of the

11   Class.  Plaintiff has retained counsel with substantial experience in prosecuting consumer class

12   actions, including actions involving defective products.

13       54.    Plaintiff and his counsel are committed to vigorously prosecuting this

14   action on behalf of the Class, and have the financial resources to do so.  Neither Plaintiff nor his

15   Counsel have interests adverse to those of the Class.

16                               **Superiority**

17       55.    Absent class treatment, Plaintiff and members of the Class will continue to

18   suffer harm and damages as a result of Logitech's unlawful and wrongful conduct.

19       56.    A class action is superior to all other available methods for the fair and

20   efficient adjudication of this controversy.  Without a class action, individual Class members

21   would face burdensome litigation expenses, deterring them from bringing suit or adequately

22   protecting their rights. Because of the relatively modest economic value of the individual Class

23   members' claims, few could likely seek their rightful legal recourse.  Absent a class action, Class

24   members would continue to incur harm without remedy, while Logitech would continue to reap

25   the benefits of its misconduct.

26       57.    The consideration of common questions of fact and law will conserve

27   judicial resources and promote a fair and consistent resolution of these claims.

28

756825.2
758927.2                              - 14 -                              COMPLAINT

**FIRST CAUSE OF ACTION**
**Violation of the California Consumer Legal Remedies Act,**
**Civ. Code Section 1750, *et seq.* (the "CLRA")**
**(On Behalf of Consumers Only)**

58.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

59.     Defendant Logitech is a "person" as defined by Civil Code § 1761(c).

60.     Plaintiff and many Class members are "consumers" within the meaning of Civil Code § 1761(d).

61.     The H1000 Remotes are "goods" within the meaning of Civil Code § 1761(a).

62.     Logitech violated the CLRA's proscription against misrepresentation of the characteristics, use, benefit, or quality of goods by affirmatively misrepresenting at all times to Plaintiff, Class members, and everyone in the chain of distribution in all of its broadly disseminated marketing and advertising, that the H1000 Remotes have the Z-Wave capability when, in fact, they do not have Z-Wave technology.  Specifically, Logitech's misrepresentation of material facts regarding the H1000 Remotes' performance capability violated (a) § 1770(a)(5)'s proscription against representing that goods have uses or characteristics they do not actually have; (b) § 1770(a)(7)'s proscription against representing that goods are of a particular standard or quality when they are of another; and (c) § 1770(a)(9)'s proscription against advertising goods with the intent not to sell them as advertised.

63.     Had Plaintiff known the truth about the H1000 Remote's Z-Wave capability, he would have purchased a different remote or paid less for the H1000 Remote he purchased.

64.     Logitech's misrepresentation of material facts was designed to and did induce Plaintiff and the members of the Class to purchase the H1000 Remotes.

65.     Plaintiff and the Class suffered actual damages as a direct and proximate result of Logitech's actions, misrepresentations, concealment and/or omissions in violation of the CLRA, as evidenced by their decisions to purchase H1000 Remotes that did not have the

promised characteristics. Had they known the true character and quality of the H100 Remotes,

Plaintiff and Class members would not have purchased (or would have paid less for) them.

66.    To this day, Logitech continues to violate the CLRA by refusing to replace

the H1000 Remotes with alternate devices that deliver the promised performance characteristics.

67.    Plaintiff, on behalf of himself and for all those similarly situated, demands

judgment against Logitech under the CLRA for injunctive relief in the form of restitution and/or

proportional disgorgement of funds paid to Logitech to purchase H1000 Remotes, an injunction

requiring Logitech to adequately repair the H1000 Remotes or replace the H1000 Remotes with

devices that have all of the promised features, including Z-Wave capability, free of charge, and an

award of attorneys' fees pursuant to Civil Code § 1780(d). Plaintiff seeks this injunctive relief for

Logitech's violations of CLRA §§ 1770(a)(5), (7), (9) and (19).

68.    In accordance with section 1782(a) of the CLRA, Civ. Code § 1782(a), on

April 18, 2008, Plaintiff's counsel, on behalf of Plaintiff Fulford, served Logitech, by certified

mail, return receipt requested, with notice of its alleged violations of CLRA §§ 1770(a)(5), (7)

and (9) relating to the H1000 Remote owned by Fulford. A true and correct copy of this notice is

attached hereto as Exhibit D. If, after 30 days of the date of the notification letter, Logitech fails

to provide appropriate relief for its violations of the CLRA, Plaintiff will amend this Complaint to

seek monetary damages for himself and the Class under that statute.

### SECOND CAUSE OF ACTION
#### Violation of California Bus. & Prof. Code Sections 17200 & 17500
#### (the "Unfair Business Practices Act")

69.    Plaintiffs incorporate by reference the allegations contained in preceding

paragraphs of this Complaint.

70.    Business & Professions Code § 17200 prohibits acts of "unfair

competition." As used in this section, "unfair competition" encompasses three distinct types of

misconduct: (a) "unlawful...business acts or practices;" (b) "unfair or fraudulent business acts or

practices;" and (c) "unfair, deceptive or misleading advertising."

71.     Logitech violated the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, *et seq.*, by engaging in conduct that violated each of the three prongs identified by the statute and outlined in Paragraph 70, above.

72.     Logitech committed an *unlawful* business act or practice in violation of the Unfair Business Practices Act, Business and Professions code § 17200, *et seq.*, when it violated the CLRA as alleged in Paragraphs 58-68, above.

73.     Logitech committed an *unlawful* business act or practice in violation of the Unfair Business Practices Act, Business and Professions code § 17200, *et seq.*, when it violated the common law prohibition against deceit/fraud as alleged in Paragraphs 83-114, below.

74.     Logitech committed *unfair and fraudulent* business acts and practices in violation of the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, *et seq.*, when it affirmatively misrepresented, actively concealed and/or failed to disclose the true performance characteristics of the H1000 Remotes in its marketing, advertising and other broadly disseminated representations in a manner likely to deceive the public. Specifically, Logitech represented that the H1000 Remotes have Z-Wave technology when, in fact, they do not.

75.     Logitech committed *unfair and fraudulent* business acts and practices in violation of the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, *et seq.*, when it refused to replace the H1000 Remotes with devices that possess all the promised features, including Z-Wave capability.

76.     Logitech disseminated *unfair, deceptive, untrue and/or misleading advertising* in violation of the Unfair Business Practices Act, Business & Professions Code §§ 17200 and 17500, *et seq.*, when it stated in its marketing, advertising and other broadly disseminated representations that H1000 Remotes have the Z-Wave feature when, in fact, they do not. These misrepresentations are likely to deceive the public. Logitech's misleading marketing and advertising statements are set forth at Paragraphs 37-38, above.

77.     Logitech's deceptive practices were specifically designed to and did induce Plaintiff and members of the Class to purchase H1000 Remotes.

78.   Logitech's deceptive practices have deceived and/or are likely to deceive Plaintiff and members of the consuming public.

79.   To this day, Logitech continues to violate the Unfair Business Practices Act by continuing to actively misrepresent and conceal the true performance characteristics and features of the H1000 Remotes.

80.   As a direct and proximate cause of Logitech's violation of the Unfair Business Practices Act, Plaintiff and the Class have suffered harm in that they own H1000 Remotes that do not perform as promised and cannot be repaired or altered in such a way to make them Z-Wave compatible.

81.   As a direct and proximate result of Logitech's violation of the Business and Professions Code § 17200, *et seq.*, Logitech has been unjustly enriched and should be required to make restitution to Plaintiff and the Class or disgorge its ill-gotten profits pursuant to Business & Professions Code § 17203.

82.   Plaintiff, on behalf of himself and for all others similarly situated, demands judgment against Logitech for injunctive relief in the form of restitution, and/or disgorgement of funds paid to Logitech to purchase the H1000 Remotes, and/or injunctive relief in the form of replacing the H1000 Remotes with devices that deliver all of the promised features, including Z-Wave capability, as well as attorneys' fees, costs and interest.

**THIRD CAUSE OF ACTION**
**Violation of Cal. Civil Code § 1710**
**Deceit and Common Law Fraud**

83.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

84.   Pursuant to California Civil Code § 1710, deceit is either (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or (4) a promise, made without any intention of performing it.

85.    Logitech's actions constitute deceit under prongs (1), (2), and (3), identified in Paragraph 84, above.

<u>Deceit Based on Intentional Misrepresentation</u>

86.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff on behalf of himself and the Proposed Class.

87.    Logitech knowingly and/or recklessly made uniform misrepresentations to consumers, including Plaintiff and the Proposed Class, that the H1000 Remote had Z-Wave technology when, in fact, it does not.

88.    Logitech knew or was reckless in not knowing that its representations were untrue.  Logitech either had actual knowledge of the fact that the H1000 Remotes did not have Z-Wave capability or it was reckless in not knowing.

89.    Logitech intended for consumers to rely on its representations regarding the quality and functionality of the H1000 Remotes.  Logitech knew that high quality and additional features, specifically Z-Wave support, would induce consumers to buy its products.

90.    Plaintiff and the Proposed Class were unaware of the fact that the H1000 Remotes did not have Z-Wave capability.

91.    Plaintiff and the Proposed Class reasonably relied on Logitech's misrepresentations regarding the Z-Wave feature.

92.    Plaintiff and the Proposed Class have been proximately damaged as a result of their reliance on Logitech's misrepresentations in that they purchased H1000 Remotes that do not have the promised Z-Wave technology.

93.    The Z-Wave feature was a primary selling point of the H1000 Remotes. Had Plaintiff and the Proposed Class known that the H1000 Remotes did not have Z-Wave capability, they would have paid less for them or purchased different remote control devices.

<u>Deceit Based on Negligent Misrepresentation</u>

94.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff on behalf of himself and the Proposed Class.

1         95.    Logitech negligently made uniform representations to consumers,

2    including Plaintiff and the Proposed Class, that the H1000 Remotes were equipped with a

3    standard Z-Wave feature when, in fact, the H1000 Remotes do not have Z-Wave capability.

4         96.    Logitech knew or reasonably should have known that its representations

5    were untrue. Logitech either had actual knowledge of the fact that the H1000 Remotes did not

6    have Z-Wave capability or it was negligent in not knowing.

7         97.    Logitech intended for consumers to rely on its representations regarding

8    the quality and functionality of the H1000 Remotes. Logitech knew that high quality and

9    additional features, specifically Z-Wave support, would induce consumers to buy its products.

10        98.    Plaintiff and the Proposed Class were unaware of the fact that the H1000

11   Remotes did not have Z-Wave capability.

12        99.    Plaintiff and the Proposed Class reasonably relied on Logitech's

13   misrepresentations regarding the Z-Wave feature.

14        100.    Plaintiff and the Proposed Class have been proximately damaged as a result

15   of their reliance on Logitech's misrepresentations in that they purchased H1000 Remotes that do

16   not have the promised Z-Wave technology.

17        101.    The Z-Wave feature was a primary selling point of the H1000 Remotes.

18   Had Plaintiff and the Proposed Class known that the H1000 Remotes did not have Z-Wave

19   capability, they would have paid less for them or purchased different remote control devices.

20             Deceit Based on Fraudulent Concealment/Nondisclosure

21        102.    The preceding paragraphs of this Complaint are realleged and incorporated

22   by reference and asserted by Plaintiff on behalf of himself and the Proposed Class.

23        103.    Logitech fraudulently concealed from and/or intentionally failed to disclose

24   to Plaintiff, the Class, and all others in the chain of distribution (*e.g.*, concealments and omissions

25   in Logitech's communications with wholesalers, retailers, and others in the chain of distribution

26   that were ultimately passed on to Plaintiff and the Class) the true nature of the H1000 Remotes,

27   which is that they do not possess Z-Wave capability.

28

104.    Under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

105.    Logitech had a duty to disclose material facts regarding the true nature of the H1000 Remotes pursuant to the second, third, and fourth prongs:

a.    Logitech had and has a duty to disclose material facts about the H1000 Remotes because Logitech had exclusive knowledge of the true properties of the H1000 Remotes at the time of sale. The lack of Z-Wave technology is latent and not something that Plaintiff or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

b.    Logitech had and has a duty to disclose material facts about the H1000 Remotes because Logitech undertook active steps to conceal them. Plaintiff is aware of nothing in Logitech's advertising, publicity, or marketing materials that discloses the truth about the H1000 Remotes' lack of Z-Wave capability, despite ample evidence that Logitech was aware of the problem by virtue of, if nothing else, numerous consumer complaints.

c.    Logitech had and has a duty to disclose material facts about the H1000 Remotes because Logitech made and makes partial representations about the H1000 Remotes but also suppresses some material facts. These partial representations give rise to a duty to disclose the full story—that the H1000 Remotes are not actually equipped with Z-Wave capability—despite Logitech's promises to the contrary.

106.    The facts concealed and/or not disclosed by Logitech to Plaintiff and the Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) an H1000 Remote.

107.    Logitech intentionally concealed and/or failed to disclose the fact that the H1000 Remotes do not have Z-Wave capability for the purpose of inducing Plaintiff and the Class to act thereon.

108. Plaintiff and the Class justifiably acted or relied to their detriment upon the concealed and/or non-disclosed facts as evidenced by their purchase of the H1000 Remotes.

109. Had Plaintiff and the Class known that the H1000 Remotes did not have the promised Z-Wave feature, they would not have purchased (or would have paid less for) their H1000 Remotes.

110. As a direct and proximate cause of Logitech's misconduct, Plaintiff and Class members have suffered actual damages in that they bought and own H1000 Remotes that do not perform as promised, and they will be required to incur costs to replace the H1000 Remotes with alternative remote control devices that have Z-Wave capability.

111. Logitech's conduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

112. Logitech has acted with "malice" as that term is defined in Civ. Code § 3294(c)(1) by engaging in conduct that was and is intended by Logitech to cause injury to the Plaintiff and the Class.

113. Logitech has committed "fraud" as that term is defined in Civ. Code § 3294(c)(3) through its concealment of material facts known to Logitech with the intent to cause injury to the Plaintiff and the Class.

114. Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Logitech for actual and punitive damages in accordance with Civ. Code § 3294(a) for himself and each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty

115. The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff on behalf of himself and the Proposed Class.

116. Logitech warranted by and through written affirmations of fact in its marketing materials that H1000 Remotes are equipped with Z-Wave capability.

117.    Plaintiffs and Class members purchased H1000 Remotes on the basis of Logitech's promise that the H1000 Remotes were equipped with Z-Wave capability.

118.    Because Logitech's promise regarding the existence of Z-Wave technology was part of the basis of the bargain, Logitech's description of the Z-Wave characteristics of the H1000 Remote created an express warranty that the H1000 Remote would have the Z-Wave feature.

119.    Logitech's description of the Z-Wave feature was an affirmation of fact; not an affirmation merely of the value of the H1000 Remote or a statement of the seller's opinion or commendation of the H1000 Remote.

120.    Contrary to Logitech's express warranty regarding the Z-Wave feature, H1000 Remotes do not have Z-Wave capability.

121.    Logitech breached its express warranty regarding the Z-Wave feature by selling H1000 Remotes that do not have the promised Z-Wave feature.

122.    Logitech received timely notice of the breach of warranty alleged herein. Logitech has been put on notice by the Class as a whole by reason of its own knowledge of the limited functionality of the H1000 Remotes, by warranty claims and other complaints made by Class members, by Plaintiff's letter of April 18, 2008 regarding violations of the CLRA, and by virtue of this Complaint, which brings suit on behalf of all Class members.

123.    Logitech has failed to provide to Plaintiff and Proposed Class members, as a warranty replacement, a remote control device that has all the promised features of the H1000 Remote, including Z-Wave.

124.    As a direct and proximate result of Logitech's breach of warranty regarding the Z-Wave feature, Plaintiff and the Class have suffered actual and consequential damages in that they purchased H1000 Remotes that do not perform as promised, and they will have to incur additional expense to replace the H1000 Remotes with alternative remote control devices that include the promised features of the H1000 Remote, including Z-Wave.

125.    Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Logitech for damages, including compensatory, incidental and consequential

1  damages (excepting damages for personal injuries) for himself and each member of the Class,

2  plus attorneys' fees, interest and costs.

3                                 **FIFTH CAUSE OF ACTION**
                                   **Unjust Enrichment**
4

5          126.    The preceding paragraphs of this Complaint are realleged and incorporated

6  by reference and asserted by Plaintiff on behalf of himself and the Proposed Class.

7          127.    To the detriment of Plaintiff and the Proposed Class, Logitech has been,

8  and continues to be, unjustly enriched as a result of the unlawful and/or wrongful collection of,

9  *inter alia*, payments for H1000 Remotes.

10         128.    Logitech has unjustly benefited through the unlawful and/or wrongful

11 collection of, *inter alia*, payments for H1000 Remotes and continues to so benefit to the detriment

12 and at the expense of Plaintiff and the Proposed Class.

13         129.    As between the parties, it would be unjust for Logitech to retain the

14 benefits attained by its actions.  Accordingly, Plaintiff and the Proposed Class seek full restitution

15 of Logitech's enrichment, benefits, and ill gotten gains acquired as a result of the unlawful and/or

16 wrongful conduct alleged herein.

17                                 **PRAYER FOR RELIEF**

18         WHEREFORE, the Plaintiff and Class members request that the Court enter an

19 Order or judgment against Logitech, including the following:

20         A.      An Order certifying this action as a Class Action (and certifying any

21 appropriate subclasses), appointing Plaintiff as Class Representative and his counsel of record

22 jointly as Class Counsel;

23         B.      Damages in the amount of monies paid for H1000 Remotes;

24         C.      Actual damages, statutory damages, punitive or treble damages, and such

25 other relief as provided by the statutes cited herein;

26         D.      Prejudgment and post-judgment interest on such monetary relief;

27

28

1        E.     Equitable relief in the form of restitution and/or restitutionary

2  disgorgement of sums received by Logitech as a result of the unfair, unlawful and/or deceptive

3  conduct alleged in herein;

4        F.     Injunctive relief;

5        G.     The costs of bringing this suit, including reasonable attorneys' fees; and

6        H.     All other relief to which Plaintiff and members of the Class may be entitled

7  at law or in equity and which the Court deems proper.

8

9                           **JURY DEMAND**

10       Plaintiff, individually and on behalf of the Proposed Class, hereby requests a jury

11  trial on the claims so triable.

12

13  Dated: April 18, 2008               Respectfully submitted,

14                           LIEFF, CABRASER, HEIMANN &
                                    BERNSTEIN, LLP

15

16                           By: _____

17                             Kristen E. Law

18                         Jonathan D. Selbin
                         Kristen E. Law

19                         275 Battery Street, 30th Floor
                         San Francisco, CA  94111-3339

20                         Telephone:  (415) 956-1000
                         Facsimile:  (415) 956-1008

21

22                         David P. Meyer
                         Matthew R. Wilson

23                         DAVID P. MEYER & ASSOCIATES CO.,
                         LPA

24                         1320 Dublin Road, Suite 100
                         Columbus, Ohio 43215

25                         Telephone:  (614) 224-6000
                         Facsimile:  (614) 224-6066

26                         Attorneys for Plaintiff and the Proposed Class

27

28

# EXHIBIT A

# Universal Remotes

Universal Remotes



| | Collapse    Remove | Collapse    Remove |
|---|---|---|
| | Harmony® 1000 Advanced Universal Remote<br>USD 499.99 | Harmony® One Advanced Universal Remote<br>USD 249.99 |

**Highlights:**

| | | |
|---|---|---|
| Backlighted Controls | ✓ | ✓ |
| Battery Status Indicator | ✓ | ✓ |
| Color Display | ✓ | ✓ |
| Infrared | ✓ | ✓ |
| Infrared Learning | ✓ | ✓ |
| Interactive Help | ✓ | ✓ |
| Multi-Device Control | ✓ | ✓ |
| Rechargeable | ✓ | ✓ |
| Touch Screen | ✓ | ✓ |
| Z-Wave™ Wireless | ✓ | |

|  | **Add To Cart** | **Add To Cart** |
|---|---|---|

Copyright © 2008 Logitech. All rights reserved.     Terms of Use ¦ Privacy + Security ¦ Subscription Management ¦ Register ¦ [•] Feedback

# EXHIBIT B



# A Touch of Luxury: Logitech Reinvents Harmony Remote with Touch Screen, Stunning Design

**DENVER — Sept. 12, 2006 — CEDIA —** Logitech (SWX: LOGN) (NASDAQ: LOGI) has reinvented the Harmony® remote control. Adding a touch of luxury to its award-winning family of Harmony advanced universal remote controls, the company unveiled its new flagship Harmony 1000 remote, which includes a striking, color touch-sensitive screen. While it looks as expensive as traditional high-end, custom-installed remotes, the Harmony 1000 remote is more affordable, is easier for consumers to set up, and sets a new standard for ease of use.

"The Harmony 1000 remote delivers affordable luxury – it simplifies control of today's complicated home-entertainment systems at a fraction of the price of traditional custom-installed remotes, and it's luxurious in its sophisticated design, which adds an element of prestige to any living room," said Bryan McLeod, vice president of Logitech's remote control products. "The Harmony 1000 remote is the interface that people crave for their home-entertainment system – it's sleek, it's easy to use with its one-touch activity based control, and it comes without a prohibitive price."

The Harmony 1000 remote's touch-sensitive screen makes the renowned Harmony activity control even easier by displaying the important controls when they are immediately relevant. And unlike some of today's high-end universal remotes, the Harmony 1000 remote controls any device with an infrared receiver – including VCRs, digital video recorders, high-definition televisions, and many household appliances. Using radio frequency (RF) technology, the Harmony 1000 remote can also control multi-room entertainment systems and high-end components hidden behind closed doors, when used in combination with the optional Logitech® Harmony® Wireless Extender (sold separately). Meanwhile, its stunning brushed-chrome and piano-black finish makes the Harmony 1000 remote an aesthetic complement to today's most sophisticated living rooms.

**The Evolution of One-Touch Activity Control**

Logitech's Harmony remotes have become the most popular brand of advanced universal remotes in the U.S. marketplace, and an emerging force in Europe, because of the Harmony platform's simple one-touch activity control. Appealing to both consumers and professional installers, the Harmony 1000 remote takes this ease of use to a new level as the first in the family to include a

touch-sensitive screen – a feature most often reserved for expensive, custom home-theater remotes.

When people first pick up the sleek, rectangular remote, the 3.5-inch color screen displays icons associated with entertainment activities – such as Watch TV, Watch a Movie, Listen to Music, or Play Games. One touch of any of these icons can put an entire home-entertainment system in the proper state for enjoyment of the activity.

After an activity is selected, the remote's screen reveals the controls needed specifically for the activity – unlike the many universal remotes with dozens of infrequently used fixed buttons that are often more confusing than useful. For example, when watching TV using a digital video recorder (DVR), people will see on screen the standard skip forward, skip back, record and pause buttons necessary to controlling a DVR. But when they are listening to CDs, they will see the track controls they need to navigate their music. The Harmony 1000 remote has only nine fixed buttons – such as volume up and down, channel up and down, and a directional navigation pad – basic controls used for most activities, which are located on the right-hand side of the remote. With built-in rechargeable batteries, the remote also comes with a convenient and stylish charging stand, eliminating the need to replace batteries and providing a base so that everyone knows where to find the remote. A full charge offers approximately one week of power, depending upon how heavy the use.

**Logitech Smart State Technology**

The Harmony 1000 remote delivers powerful activity-based control by using patented Smart State Technology®, which allows a remote to track the operations of the various components it controls. With the technology, Harmony remote users can effortlessly switch between watching home theater and listening to music by selecting a single activity button.

**Easy Online Setup**

Logitech has redesigned its online interface to make the Harmony Internet setup easier than ever. With an intuitive setup wizard to walk them through the process, people start setup by entering their components' model numbers. That information is automatically matched to the characteristics, discrete codes and infrared commands of the more than 175,000 devices from more than 5,000 manufacturers contained in Logitech's online database – the world's largest audio/visual control database.

The wizard then helps people define the various entertainment activities and identify the entertainment components used for each activity.

Logitech Introduces Touch-Sensitive Harmony 1000 Remote – **Page 3**

**Pricing and Availability**

The Harmony® 1000 remote is expected to be available in both the U.S. and Europe later this fall for a suggested retail price of $499.99 in the U.S. The Logitech Harmony Wireless Extender will be available at the same time for $149.99 in the U.S. and Europe.

**About Logitech**

Founded in 1981, Logitech designs, manufactures and markets personal peripherals that enable people to effectively work, play, and communicate in the digital world. Logitech International is a Swiss public company traded on the SWX Swiss Exchange (LOGN) and in the U.S. on the Nasdaq Global Select Market (LOGI).

# # #

Logitech, the Logitech logo, and other Logitech marks are owned by Logitech and may be registered. All other trademarks are the property of their respective owners. For more information about Logitech and its products, visit the Company's Web site at www.logitech.com.

# EXHIBIT C





# Harmony 1000
# Reviewer's Guide



Logitech Reviewer's Guide: Harmony 1000 Advanced Universal Remote – **Page** i

This document may not, in whole or in part, be copied, photocopied, reproduced, translated, or reduced to any electronic medium or machine-readable form without prior consent granted in writing from Logitech.

While every effort has been made to assure technical accuracy, information in this document is subject to change without notice and does not represent a commitment on the part of Logitech.

Logitech makes no warranties with respect to this documentation and disclaims any implied warranties of merchantability and fitness for a particular purpose. Logitech shall not be liable for any errors or for incidental or consequential damages in connection with the furnishing, performance, or use of this manual or examples herein.

The information contained in this document was examined carefully and is believed to be accurate as of its date of publication.

© 2007 Logitech Inc.
6505 Kaiser Drive
Fremont, CA 94555

Logitech, the Logitech logo, Harmony, and Smart State Technology are registered trademarks of Logitech Inc. Microsoft, Windows Vista, and Windows XP are trademarks or registered trademarks of Microsoft Corp. Apple, Mac, and Mac OS are registered trademarks of Apple Inc. TiVO is a registered Trademark of TiVO Inc.

# Logitech Reviewer's Guide
## Table of Contents

**Additional Resources** ................................................................................................ 1

**Part 1: Product Overview** ........................................................................................ 2

  1.1 Introduction ...................................................................................................... 2

  1.2 Brief Market Summary ..................................................................................... 3

  1.3 Key Features .................................................................................................... 3

  1.4 Rethinking the User Interface .......................................................................... 5

  1.5 Additional Features .......................................................................................... 6

  1.6 Product Specifications ..................................................................................... 7

**Part 2: Installation and Use** .................................................................................... 9

  2.1 Setup ............................................................................................................... 9

  2.2 Harmony Web Portal Images ........................................................................... 9

  2.3 Usage Tips ..................................................................................................... 16

Additional Resources

**Note to Reviewers:** This guide provides information to help you craft your independent review of the Logitech Harmony 1000 advanced universal remote. The communications team at Logitech hopes you'll find our efforts helpful. We would appreciate your feedback.

Images and resources are available online at http://www.logitech.com/pressroom, or from the Logitech contact listed contact below.

**Press Relations Contact (not for publication)**

Nathan Papadopulos
Marketing Communications Manager
Logitech Harmony Remote Controls
Phone: 510.713.4207
Nathan_Papadopulos@logitech.com

**Contact References**

Refer your readers to:
www.logitech.com/harmony
Customer Support:
866-291-1505

**Supporting Documents**
- Press Release
- Smart State Technology Backgrounder

# Part 1: Product Overview

## 1.1 Introduction

The Logitech® Harmony® 1000 advanced universal remote is a complete solution that controls every facet of today's sophisticated home-entertainment environment – including hi-def TVs, VCRs, DVRs, audio systems and even room lighting and heating systems. The remote is designed to control each device as part of the overall home-entertainment system instead of controlling individual components separately. That means, the Harmony 1000 takes into account how each individual device works in a given activity and ensures that all devices work together seamlessly, regardless of the mix of brands and manufacturers. The Harmony 1000 advanced universal remote controls all these devices with its innovative, activity-based controls.

The Harmony 1000 is Logitech's first touch-sensitive remote control. It features a brilliant 3.5-inch, color touch-sensitive screen; brushed aluminum and piano-black finish; and a stylish rectangular shape. Together, these features elevate control of today's complex home-entertainment systems to a new level.



With its large 3.5-inch color touch-screen, brushed aluminum faceplate, and backlighted buttons, the Harmony 1000 is easy to use and stylish. The back side features a non-slip finish. (Shown docked in recharging station.)

## 1.2 Brief Market Summary

Today's home-entertainment systems often require people to operate three or four remote controls at a time. As more advanced components, featuring more complex technologies, enter the living room, people are increasingly in need of a way to simplify control of their home-entertainment system. And the trend is growing: According to analyst firm Forrester Research, as of the end of 2006, 46.8 million U.S. households, or 41 percent, have installed home-entertainment systems that include a DVR or an HDTV[1]. The Logitech Harmony 1000 offers both a practical and stylish solution for simplifying control of these systems.

## 1.3 Key Features

With its color touch-sensitive screen, activity-based control, and easy setup, the Harmony 1000 represent state-of-the-art remote control technology. Here are the key features:

### Large Touch-Sensitive Screen

With its centerpiece – a brilliant 3.5-inch, color touch-sensitive screen – the Harmony 1000 sets a new standard for ease of use. The striking color screen clearly displays intuitive icons that people simply touch to control their devices.

### Activity-Based Control

Traditionally, universal remotes control devices, not activities. Watching a movie requires separate actions to turn on and set the inputs for the TV, DVD player and audio system. Advanced users might write macros – or hire a professional to write them – that combine these actions into a single button, but it's a complicated procedure that requires knowing the control codes and a technical knowledge of each device. Often, people miss a device code because the macro isn't programmed to take into account time delays when working with a sequence of device commands. Additionally, a macro-programmed remote does not track the state of the components it controls.

The Harmony 1000 has a better way: **activity-based control**. People simply select the icon that represents the activity they want. Selecting Watch DVD, for example, turns on the TV, sets the input to DVD, turns on the A/V receiver, sets the audio input, turns on the DVD player, and even ejects the bay to accept a DVD. All this is accomplished by touching the Watch DVD icon on the screen.

---

[1] The State of Consumers And Technology: Benchmark 2006, Forrester Research, Inc., July 27, 2006.



**Activity screen.** Every activity screen features large, colorful, easy-to-understand icons. Note the Help button at the top; it appears on every screen. This screen shows the Watch TV activity for a home-entertainment system that contains a DVR or other device similar to a TiVO®.

## Smart State Technology

Logitech uses a patented Smart State Technology® that intelligently controls the state of each component – that means, from the time the Harmony 1000 is set up, the Smart State Technology ensures that each device is functioning properly during each activity. And if a device is not functioning properly, Smart State Technology recognizes this and resynchronizes the signals. Consider an example: Toggling a TV's power on and off. When someone watching cable television wants to view a DVD, an ordinary remote might send a toggle-power command to the TV, even though the TV is already on. The result: the TV may be turned off. With the Harmony 1000, if the same person switches from watching cable television to viewing a DVD, Logitech's Smart State Technology keeps track of the state of each device to avoid incorrect settings.

## Online Setup

The Harmony 1000 remote is set up by installing software on an Internet-connected computer. Once the included USB cable is connected from the remote to the user's computer, the Harmony setup wizard guides the user through the process, including selecting devices from the online Harmony Device Database and choosing activities (Watch TV, Watch a Movie, Listen to music, etc.).

No technical knowledge is required. There's no need to look up IR codes and type them into the remote. The Logitech Device Database contains IR codes and discreet codes for each device. It also contains detailed information about each component's inputs and how long it takes for inputs to change, which takes into account timing delays for each device.

**Support for Nearly Any A/V Product**

Logitech currently supports more than 5,000 brands and nearly 200,000 different devices. The database is updated with current information on new products on a daily basis. This updating ensures that Harmony remotes will work with new products as they become available.

## 1.4 Rethinking the User Interface

Even as consumers embrace touch-screen control and quickly adapt to it, navigating through multiple screens to infrequently used commands, or second-tier functions, can be frustrating. After considerable research, Logitech designed the Harmony 1000 graphical interface to be easily navigated by every member of a household.

To develop the Harmony 1000, Logitech's usability research program focused on in-home observations to determine the easiest way to navigate through the screens. The subjects in these usability studies represented a diverse consumer audience to provide Logitech with broad insight into today's home environments.

To interpret research results, Logitech assembled a team of usability and human-interface experts. Their mission was to transform the research efforts into the graphical user interface found in the Harmony 1000. As a result, Logitech applied a flat design to the Harmony 1000 interface. That means, there is no more than four screens for any activity.



**Corner controls.**
Each corner of the Harmony 1000 screen displays an icon that provides fast, direct access to additional functions and commands for devices used in the currently chosen activity.

Each touch-sensitive corner icon leads to a screen with commands that correspond to that activity. And the illuminated corner icon indicates the type of screen (see below). This provides a fast, easy, and intuitive method for accessing many different kinds of information.



| | |
|---|---|
| | Displays a numeric keypad for making direct selections within the current activity, such as selecting a TV channel, DVD chapter number, radio station frequency, or carousel number for a CD/DVD jukebox |
| | Selects commands related to picture and sound adjustments within the current activity. For a TV, for example, this includes picture-in-picture or color adjustment. For an amplifier, however, this would include bass/treble, surround-sound mode, etc. |
| | Accesses transport commands for the current activity:<br>  Watch TV with DVR – Pause / Play / Rewind live TV<br>  Watch DVR – Pause / Play / Rewind / Fast Forward / Record<br>  Watch DVD – Pause / Play / Rewind / Fast Forward<br>  Listen to Music – Pause / Play / Skip Track<br>  Play video game – Pause, Resume |
| | Displays favorites for the current activity, including favorite TV stations or radio-station presets |

## 1.5 Additional Features

Online setup, activity-based control, and ease of use are the primary qualities that separate Harmony remotes from the rest of the universal remotes on the market. However, the Harmony 1000 incorporates many additional features that transform this elegant device into a highly-desirable addition to any home.

- **Design:** The Harmony 1000 presents a sleek shape and brushed aluminum face that looks right at home as the control center of today's home.

- **Out of Sight:** When using the Harmony 1000 with a Harmony RF Wireless Extender (sold separately), Harmony owners can eliminate clutter by placing audio-visual components and their cumbersome cables out of sight. Because the remote transmits both infrared (line of sight) and radio frequency (RF) commands, it's easy to control equipment inside a cabinet or even in an adjacent room. The RF capability of the Harmony 1000 remote is based on the new Z-Wave home-automation standard. Z-Wave technology enables people to command lighting controls and other such devices that are Z-Wave compatible.

- **Rechargeable Battery:** The user-replaceable, lithium-ion battery can run for long periods on a single charge. Charging is done by placing the Harmony 1000 remote on the included charging base. Finished in high-gloss black, the charging base is just as stylish as the Harmony 1000 remote.

- **Help Button:** Help is available in two places. On the Harmony 1000 display, every screen features a prominent Help icon. Simply tap the touch screen to launch the device's built-in help system. Should an activity perform in an unexpected way (for example, if the TV fails to turn off), the Help button can help resolve the interruption. In addition, the Harmony Web portal features help tips on every screen.

1.0 Product Specifications



**Price**

- Logitech Harmony 1000 advanced universal remote, $499.99
- Logitech Harmony Wireless Extender (optional), $149.99

**Warranty**

One year

**Logitech Harmony Wireless Extender (optional)**



Available as a separate product, the Harmony Wireless Extender provides complete control of components that are hidden behind cabinets or walls. With a range of up to 100 feet, the Wireless Extender allows the homeowner to place quipment out of sight or even move it to 1ext room. Designed for use with the h Harmony 1000 and Harmony 890 universal remotes, Z-Wave (RF) nables remote control of audio, visual, ınd security systems without direct line-of-ɛivers can be used to control multiple

**System Requirements**

**Computers running Windows®**
- Microsoft Windows Vista, XP, 2000
- USB port
- CD-ROM drive
- Internet access

**Macintosh® computers:**
- Mac OS X 10.3 or later
- USB port
- CD-ROM drive
- Internet access

**In the Box**
- Logitech® Harmony® 1000 remote control
- Charging station
- USB cable
- AC Adapter
- Lithium-ion battery
- Installation CD
- Installation guide
- One-year warranty

## Part 2: Installation and Use

In this section, we'll describe the setup process and how to use the Harmony 1000 advanced universal remote.

**List of some of the key features:**

- Use of non-technical, everyday terms
- Vast database of more than 175,000 supported audio-visual products
- Fresh, inviting online screen design to simplify setup
- Help tips appear on every screen during the setup process, leading to additional detailed help
- Multiple opportunities for owner to confirm settings and easily adjust them
- Large, bright, color touch-screen on remote unit
- A "Remote Assistant" on the handheld remote provides a tutorial for first time users

### 2.1 Setup

Setting up the Harmony 1000 typically takes about 20 to 50 minutes. These are the key steps in the process. Internet access is required for setup.

- Install the Harmony software from the included CD.
- Create an online account. This is necessary to access the Harmony Device Database and to keep track of settings for the owner's individual device.
- Connect the Harmony 1000 to a USB port. The USB connector is located on the left side, under a protective rubber cover.
- Select the relevant devices that the Harmony 1000 will control from the Harmony Device Database. For each device (TV, DVD player, game console, etc.), the owner identifies the manufacturer from scrollable pull-down lists, and then enters the appropriate model number of their device.
- Identify the activities the owner will control with the remote. These include Watch TV, Watch a Movie, Listen to Music, Play a Game, etc.

After reviewing and confirming choices, the owner clicks a button to initiate a download to the remote device. The download contains all device and activity information, along with any updates to the remote's internal software (firmware update).

The setup process is straightforward and intuitive, even for people who are not familiar with setting up high-tech components.

### 2.2 Harmony Web Portal Images

Thanks to Harmony's online setup, there's no need for this reviewer's guide to contain an exhaustive list of numbered steps. Instead, several screen shots follow with commentary pointing out key elements you may wish to share with your readers. These screen shots are representative of the steps that a new user would see while going through the process of setting up the Harmony remote.



**Select Devices.** The owner adds devices (TV, A/V Receiver, Digital Set Top Box, DVR, Satellite, DVD, VCR, etc.) by checking the box at left and selecting the manufacturer from the pull-down list. Note that this step, "Add Devices," is highlighted in the progress bar. Every screen displays a relevant tip and contains a button for additional online help. This tip also contains a link for the owner to print a blank worksheet for writing down all device model numbers.



**Confirm devices.** After selecting their devices, people can review their choices and make additions, deletions or changes as necessary. (Note: People can reprogram their device at any time.)



**Online tutorials.** Everyone understands what a device is, but the concept of activities (watch a movie, etc.) may be new. An online audio-video tutorial explains and illustrates the concept in an engaging, inviting manner.



**Activity setup.** The owner chooses the activities he or she wants to enable by checking a box (Watch TV, Play VCR shown). The Harmony Device Database already knows the command strings for each device and does the rest of the work.



**Configuration question.** In setting up the Watch TV activity, the Harmony remote asks whether the TV''s internal tuner or other device is used to change channels. Here, the owner specifies that the cable set-top box is used to change channels.



**Activity confirmation.** The owner has completed setup of the six activities shown. A checkmark indicates completed status and large buttons make it simple to change any activity.



**Firmware update.** The Harmony software automatically updates, when necessary, the handheld device's internal operating software whenever the device is plugged into a USB port and the computer is connected to the Internet.



**Activity control.** Activities appear on this central control screen. Each activity has large buttons to change settings, troubleshoot or even customize the buttons on the handheld remote unit. Small icons under each activity identify the devices used by the activity. The large, yellow "Update Remote" button in the top right-hand corner begins downloading all the device and activity information to the handheld remote. Blue buttons at top left allow people to add an activity or change the order of existing activities.



**Customize buttons.** For any activity (Watch TV in this example), the Harmony 1000 remote's hard buttons and navigation controls can be fully reconfigured. This screen shows that the volume up/down and mute buttons control the TV directly, while all other buttons control the set-top box.



**Device control.** Similar to the preceding activity screen, the Device screen lists all selected devices and the activities that they've been assigned. Settings are easily changed (see following screen). With the Learn IR function, the Harmony device can learn IR commands from a device's proprietary remote in the rare case the device is not listed in the Harmony Device Database.



**Device Setup:** Depending on the device, dozens of specialized settings are possible. In this example, the user wants the set-top box to remain powered on at all times regardless of activity (to avoid a lengthy boot-up process).



**Customizing Backgrounds:** The default blue background on the Harmony 1000 remote can be easily changed to one of several other pre-defined choices. At the bottom of this scroll list, the user can upload a 320 x 240 pixel graphic file as a custom background.

## 2.3 Usage Tips

You'll find use of the Harmony 1000 intuitive. Nevertheless, here are a few tips to get you up to speed quickly.

- Press the **Activities** button to return to the home screen at any time.

- Most activities have additional screens that display additional functions. When listening to the radio, for example, press the ★ key to display additional buttons for accessing radio-station presets.

- Whenever you see a gray **Devices** button, tap it to access additional functions for any device. For example, selecting the TV (depending on the model you selected) provides access to picture-in-picture functions, the unit's internal menus for adjusting color and brightness, and much more. Accessing the set-top box's functions let people choose pay-per-view and other capabilities.

- To start a different activity, simply press the **Activities** button to return to the home screen. You can then select another activity. Note that devices are powered on and off based on the activity you select. Choose the Listen to CDs activity and the television is turned off. But if you are already watching TV and select the Watch a DVD activity, because of Logitech's Smart State Technology, the TV stays on.

- The small button located at the top left of the Harmony 1000 is the power button and turns everything off.

### # #

# EXHIBIT D

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

ATTORNEYS AT LAW

KRISTEN E. LAW
PARTNER

780 THIRD AVENUE, 48TH FLOOR
NEW YORK, NEW YORK  10017-2024
TELEPHONE: (212) 355-9500
FACSIMILE: (212) 355-9592
mail@lchb.com
www.lchb.com

SAN FRANCISCO
WASHINGTON, D.C.
NASHVILLE

April 18, 2008

**VIA CERTIFIED MAIL (RETURN RECEIPT REQUESTED)**

Gerald P. Quindlen
President and Chief Executive Officer
Logitech, Inc.
6505 Kaiser Dr.
Fremont, CA 94555

Registered Agent
Catherine L. Valentine
General Counsel
6505 Kaiser Drive
Fremont, CA 94555

Re:    Notice Concerning Deceptive Practice under the California Consumer
Legal Remedies Act

Dear Mr. Quindlen:

Pursuant to the California Consumer Legal Remedies Act, California Civil Code Section 1750 *et seq.* (the "CLRA"), and specifically, Sections 1782(a)(1) and (2), Arthur Fulford, on behalf of himself and all others similarly situated, through his undersigned counsel, hereby notifies you that Logitech, Inc. ("Logitech") is alleged to have violated Civil Code Section 1770 by warranting, marketing, advertising and selling Harmony 1000 Advanced Universal Remote controls that were not equipped with Z-wave technology despite Logitech's affirmative representations that the devices did have Z-wave capabilities.

Harmony 1000 Advanced Universal Remote controls are not as advertised in that Logitech represented to consumers that these models had Z-wave capability when they do not. Logitech affirmatively misrepresented the properties and characteristics of Harmony 1000 Advanced Universal Remote controls in a manner violative of the California Consumer Legal Remedies Act, California Civil Code Section 1770, *et seq.*

In particular, Logitech's conduct constituted, among other things, the following violations of Section 1770 of the California Civil Code:

Gerald P. Quindlen
April 18, 2008
Page 2

1.  Logitech has represented that Harmony 1000 Advanced Universal Remote
    controls have characteristics or benefits which they do not have (Section
    1770(a)(5));

2.  Logitech has falsely represented Harmony 1000 Advanced Universal Remote
    controls are of a particular standard, quality or grade when they are not of the
    represented standard, quality or grade (Section 1770(a)(7)); and

3.  Logitech has advertised Harmony 1000 Advanced Universal Remote controls
    with the intent not to sell them as advertised (Section 1770(a)(9)).

Based on the foregoing, Mr. Fulford, on behalf of himself and all others similarly
situated (the "Class"), demands that Logitech cease the above-described conduct, and agree to
replace the defective Harmony 1000 Advanced Universal Remote controls at no cost with a
device that has all of the advertised features of the Harmony 1000 Advanced Universal Remote
controls, including Z wave capability, or otherwise make their purchasers and owners whole.
Please be advised that should Logitech refuse this demand, Mr. Fulford will seek monetary
damages for himself and a proposed Class of others similarly situated, as well as an award of
injunctive relief, restitution, punitive damages, and any other relief a court deems proper.  Please
have your attorney contact us with any questions regarding this notice and demand.

Very truly yours,

Kristen E. Law

cc:     David P. Meyer

756405.1



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

| | | |
|---|---|---|
| Postage | $ | .41 |
| Certified Fee | | 2.65 |
| Return Receipt Fee (Endorsement Required) | | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 5.21 |

Postmark Here

Sent To  *Catherine Valentine, Gen Counsel*
Street, Apt. No.; or PO Box No.  *6505 Kaiser Drive*
City, State, ZIP+4  *Fremont CA 94555*

PS Form 3800, June 2002                    See Reverse for Instructions

7005 0390 0005 5824 9207
CERTIFIED MAIL
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7005 0390 0005 5824 9207

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Catherine L. Valentine*
*General Counsel*
*6505 Kaiser Drive*
*Fremont, CA 94555*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Transfer from service label)

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540