1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    PHILIP S. WARDEN (State Bar No. 54752)
2   philip.warden@pillsburylaw.com
    50 Fremont Street
3   Post Office Box 7880
    San Francisco, CA  94120-7880
4   Telephone:  (415) 983-1000
    Facsimile:  (415) 983-1200
5
    PILLSBURY WINTHROP SHAW PITTMAN LLP
6   DAVEED A. SCHWARTZ (State Bar No. 200046)
    daveed.schwartz@pillsburylaw.com
7   400 Capitol Mall, Suite 1700
    Sacramento, CA  95814-4419
8   Telephone:  (916) 329-4700
    Facsimile:  (916) 441-3583
9
    Attorneys for Defendant
10  LOGITECH, INC.

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14  _____

15  ARTHUR FULFORD, on behalf of himself     )  Case No. C 08-02041 MMC
    and all others similarly situated,       )
16                                           )  DEFENDANT LOGITECH, INC.'S
                            Plaintiff,        )  MEMORANDUM IN SUPPORT OF ITS
17                                           )  MOTION TO DISMISS FIRST
            vs.                               )  AMENDED COMPLAINT
18                                           )
    LOGITECH, INC., a California corporation, )  [Declaration of Peter J. Evans in support of
19  and DOES 1-100, inclusive,               )  Rule 12(b)(1) Motion only; Request for
                                             )  Judicial Notice.]
20                          Defendants.       )
                                             )  Hearing Date:   October 3, 2008
21                                           )  Time:           9:00 a.m.
                                             )  Courtroom:      7
22                                           )  Judge:          Hon. Maxine M. Chesney
                                             )
23                                           )  Complaint Filed: April 18, 2008
                                             )  Trial Date:     None Set
24  _____)

25

26

27

28

DEFENDANT LOGITECH, INC.'S MEMORANDUM
                                               IN SUPPORT OF ITS MOTION TO DISMISS
                                               FIRST AMENDED COMPLAINT
                                               Case No. C 08-02041 MMC

1

Table of Contents

2

Page

3    I.    INTRODUCTION ....................................................................................1

4    II.   PLAINTIFF'S ALLEGATIONS REGARDING HIS CLAIMED
           PURCHASE ...........................................................................................2

5

III.  ARGUMENT ..........................................................................................5

6
     A.    Legal Standard ............................................................................5

7
           1.    Motion to Dismiss for Lack of Subject Matter Jurisdiction ...........5

8
           2.    Motion to Dismiss for Failure to State a Claim..........................7

9
           3.    Applicability of Rule 9(b) ....................................................7

10

11   IV.   PLAINTIFF'S CLAIMS DO NOT PRESENT A "CASE" OR
           "CONTROVERSY" UNDER ARTICLE III ............................................9

12   A.    Plaintiff Cannot Show Injury In Fact Because California Law Does Not
           Apply to a Non-Resident's Injury Caused By Out-of-State Conduct .................9

13

14   B.    Plaintiff Cannot Show Injury in Fact Because He Lacks Standing to
           Bring His Statutory and Common Law Claims.............................................13

15   C.    Plaintiff Cannot Show His Alleged Injury is Fairly Traceable to Logitech .......13

16   V.    THE FAC FAILS TO STATE A CLAIM AS TO ANY OF ITS CAUSES
           OF ACTION.........................................................................................13

17
     A.    Plaintiff Fails to State a Claim for Relief under the CLRA ..............................14

18
           1.    Plaintiff fails to allege a "transaction" vis-à-vis Logitech "intended to
19                result or which result[ed]" in the sale of goods or services.........................14

20         2.    Plaintiff's CLRA claim fails to allege causation and reliance.....................16

21   B.    Plaintiff Fails to State a Claim for Relief under the UCL or FAL ....................17

22         1.    Plaintiff's UCL and FAL claims fail to allege causation and reliance.........18

23         2.    Plaintiff cannot claim restitution under either the UCL or FAL .................18

24   C.    Plaintiff Fails to State a Claim for Fraud........................................................20

25         1.    Intentional Misrepresentation .....................................................................21

26         2.    Negligent Misrepresentation .......................................................................21

27         3.    Fraudulent Concealment / Nondisclosure ....................................................22

28

1     D.     Plaintiff Fails to State a Claim for Breach of Express Warranty ........................25

2     E.     Plaintiff Fails to State a Claim for Unjust Enrichment.......................................25

3   VI.    CONCLUSION ...............................................................................................26

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT LOGITECH, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS
FIRST AMENDED COMPLAINT
Case No. C 08-02041 MMC

1               Table of Authorities

2                                                              Page

3                          Cases

4   Agosta v. Astor,
        120 Cal.App.4th 596 (2004) ................................................... 21
5
    Allee v. Medrano,
6       416 U.S. 802 (1974) ............................................................. 11

7   Alperin v. Vatican Bank,
        2007 WL 4570674 (N.D. Cal.  Dec. 27, 2007) ........................ 6
8
    Aron v. U-Haul Co. of Cal.,
9       143 Cal.App.4th , 796 (2006) ............................................... 15

10  Balistreri v. Pacifica Police Dep't,
        901 F.2d 696 (9th Cir. 1990) ................................................. 7
11
    Bell Atl. Corp. v. Twombly,
12      127 S. Ct. 1955 (2007) ................................. 7, 13, 17, 24

13  Buckland v. Threshold Enterprises, Ltd.
        155 Cal.App.4th 798 (2007) ................................................ 15
14
    Caro v. Procter & Gamble Co.,
15      18 Cal.App.4th 644 (1993) .................................................. 16

16  Cattie v. Wal-Mart Stores, Inc.,
        504 F.Supp.2d 939 (S.D. Cal. 2007) .......................... 9, 13, 16
17
    Churchill Village, L.L.C. v. Gen. Elec. Co.,
18      169 F.Supp.2d 1119 (N.D. Cal. 2000) .............................. 9, 10

19  Diamond Multimedia Sys., Inc. v. Super. Ct.,
        19 Cal.4th 1036 (1999) ................................................... 9, 10
20
    Dinosaur Dev., Inc. v. White,
21      216 Cal.App.3d 1310 (1989) ............................................... 25

22  Epstein v. Wash. Energy Co.,
        83 F.3d 1136 (9th Cir. 1996) ................................................. 7
23
    Firoozye v. Earthlink Network,
24      153 F.Supp.2d 1115 (N.D. Cal. 2001) .................................. 21

25  Fundin v. Chicago Pneumatic Tool Co.,
        152 Cal.App.3d 951 (1984) .................................................. 24
26
    Hall v. Time, Inc.,
27      158 Cal.App.4th 847 (2008) ................................................ 18

28

DEFENDANT LOGITECH, INC.'S MEMORANDUM
                                                   IN SUPPORT OF ITS MOTION TO DISMISS
                                                   FIRST AMENDED COMPLAINT
                                                   Case No. C 08-02041 MMC

In re Autodesk, Inc. Sec. Litig.,
   132 F.Supp.2d 833 (N.D. Cal. 2000) ................................................................ 7

In re GlenFed, Inc. Sec. Litig.,
   42 F.3d 1541 (9th Cir. 1994) .......................................................................... 7

In re Portal Software, Inc. Securities Litigation,
   2005 WL 1910923 (N.D. Cal. Aug. 10, 2005) ..................................... 7, 8

Korea Supply v. Lockheed Martin Corp.,
   29 Cal.4th 1134 (2003) ........................................................................... 18, 19

Laster v. T-Mobile USA, Inc.,
   407 F.Supp.2d 1181 (S.D.Cal. 2005) ............................................................ 18

Lectrodryer v. Seoulbank,
   77 Cal.App.4th 723 (2000) ............................................................................ 24

Lovejoy v. AT&T Corp.,
   119 Cal.App.4th 151 (2004) ......................................................................... 22

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992) ........................................................................................ 5

Mass. Mut. Life Ins. Co. v. Super. Ct.,
   97 Cal.App.4th (2002) ................................................................................... 16

Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC,
   (E.D. Cal. 2005) ............................................................................................. 8

Mitchell v. National Auto. & Casualty Ins. Co.,
   38 Cal.App.3d 599 (1974) ............................................................................. 10

Neilson v. Union Bank of California, N.A.,
   290 F.Supp.2d 1101 C.D. Cal. 2003 ............................................................. 21

Nordberg v. Trilegiant Corp.,
   445 F.Supp.2d 1082 (N.D. Cal. 2006) ...................................................... 9, 14

Norwest Mortgage, Inc. v. Super. Ct.,
   72 Cal.App.4th 214 (1999) ..................................................................... 9, 10, 11

Oestreicher v. Alienware Corp.,
   544 F.Supp.2d 964 (N.D. Cal. 2008) ............................................................ 23

Parks Sch. of Bus. v. Symington,
   51 F.3d 1480 (9th Cir. 1995) ........................................................................... 6

Parrish v. National Football League Players Ass'n,
   534 F.Supp.2d 1081 (N.D. Cal. 2007) .......................................................... 24

Phillips Petroleum Co. v. Shutts,
   472 U.S. 797 (1985) ...................................................................................... 10

1   Safe Air for Everyone v. Meyer,
      373 F.3d 1035 (9th Cir. 2004) ........................................................... 6

2
   Scott v. Breeland,
3      792 F.2d 925 (9th Cir. 1986) ........................................................... 5

4   Shersher v. Sup. Ct.,
      154 Cal.App.4th 1491 (2007) ................................................... 18, 19
5
   Simon v. E. Ky. Welfare Rights Org.,
6      426 U.S. 26 (1976) ........................................................... 6

7   Snyder v. Ford Motor Co.,
      2006 WL 2472187 (N.D. Cal. Aug. 24, 2006) ...................................... 7, 22
8
   Sprewell v. Golden State Warriors,
9      266 F.3d 979 (9th Cir. 2001) ........................................................... 17

10   Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp.,
      594 F.2d 730 (9th Cir. 1979) ..................................................... 5, 6
11
   Valley Forge Christian Coll. v. Am. United for Separation of Church &
12      State, Inc.,
      454 U.S. at 472 ........................................................... 6
13
   Vess v. Ciba-Geigy Corp USA,
14      317 F.3d 1097 (9th Cir. 2003) ..................................................... 7, 8, 14

15   Warth v. Seldin,
      422 U.S. 490 (1975) ........................................................... 5
16
   Wilens v. TD Waterhouse Group, Inc.
17      (2003) 120 Cal.App.4th 746, 15 Cal.Rptr.3d 271) ................................ 16

18   Wolfe v. Strankman,
      392 F.3d 358 (9th Cir. 2004) ........................................................... 6
19
   Wool v. Tandem Computers, Inc.,
20      818 F.2d 1433 (9th Cir. 1987) ..................................................... 15

21                         Constitution

22   United States Constitution
      Article III ........................................................... passim
23
                       Statutes and Codes
24
   California Business and Professions Code
25      Section 17204 ........................................................... 18
      Section 17500 ........................................................... 10
26
   California Civil Code
27      Section 1710 ........................................................... 10
      Section 1750 ........................................................... 9
28

701216963v1            – v –           DEFENDANT LOGITECH, INC.'S MEMORANDUM
                                                IN SUPPORT OF ITS MOTION TO DISMISS
                                                FIRST AMENDED COMPLAINT
                                                 Case No. C 08-02041 MMC

Section 1761(e) ................................................................................ 14
Section 1770 ..................................................................................... 14
Section 1770(a) ................................................................................ 14
Section 1780(a) ........................................................................... 14, 15

California Commercial Code
Section 2313(1) ............................................................................... 24

Code of Civil Procedure
Section 382 ...................................................................................... 18

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
Rule 9(b) ................................................................................... passim
Rule 12(b)(1) .......................................................................... 2, 5, 9, 13
Rule 12(b)(6) ................................................................................... 2, 6

<u>Other Authorities</u>

<u>Leegin's Unexplored "Change In Circumstance": The Internet and Resale Price
Maintenance</u>, 121 Harv. L. Rev. 1600, 1614 (2008) ................................. 12

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    I.    Introduction

3            In his First Amended Class Action Complaint ("FAC"), Plaintiff Arthur Fulford

4    ("Plaintiff"), a resident of Florida, attempts to invoke California law to assert various

5    statutory and common law claims concerning his purely private purchase this year – wholly

6    outside of California – of a used Harmony 1000 Advanced Universal Remote (the

7    "H1000") manufactured in 2006 by Defendant Logitech, Inc. ("Logitech"). Plaintiff's only

8    pre-purchase contact with Logitech was as a "free rider" to its website, which Plaintiff most

9    recently claims he visited merely to "confirm" what he had allegedly been told by the

10   private seller—i.e., that the H1000 had "full Z-Wave functionality." Though he formed no

11   business relationship whatsoever with Logitech in connection with his purchase, Plaintiff

12   seeks to hold Logitech responsible for alleged false and misleading advertising with respect

13   to the H1000's Z-Wave capabilities.

14           Plaintiff admits he did not purchase his H1000 either from Logitech or from any of

15   its distributors or retail partners. Notably, Plaintiff fails to allege any specific

16   misrepresentation(s) that he personally saw on Logitech's website, or that he actually and

17   justifiably relied on, before purchasing the H1000. These and related deficiencies are fatal

18   to Plaintiff's entire complaint which, because it alleges a unified course of fraudulent

19   conduct, is subject to Rule 9(b)'s heightened pleading requirements. In any event,

20   Logitech's website advertising of new H1000s is not directed toward persons who, like

21   Plaintiff, seek to acquire a used H1000. Additionally, although Plaintiff most recently

22   claims that the private seller of the H1000 was himself misled by Logitech's advertisements

23   and, in turn, innocently conveyed such information to the Plaintiff, these allegations also

24   fail under Rule 9(b) and for other reasons. Furthermore, because Plaintiff acquired his

25   H1000 from another individual, Logitech derived no monetary benefit whatsoever from

26   Plaintiff's acquisition of his H1000. Finally, the FAC's key allegation that Plaintiff was

27   unaware of the H1000's true properties before he bought it are simply implausible and

28

1    cannot be cured on further amendment.

2         Though California has little if any contact with the Plaintiff's claims, the FAC is

3    comprised entirely of state law claims; i.e., alleged violations of the Consumers Legal

4    Remedies Act ("CLRA"), the Unfair Competition Law ("UCL"), the False Advertising Law

5    ("FAL"), deceit / common law fraud (i.e., intentional and negligent misrepresentation, and

6    fraudulent concealment / nondisclosure), common law breach of express warranty, and

7    unjust enrichment.  Plaintiff cannot personally allege a viable cause of action, and therefore

8    his effort to assert claims on behalf of an alleged class of "all similarly-situated individuals

9    and entities who own or have owned" an H1000 must also fail.

10         As set forth below, each of Plaintiff's causes of action – including, specifically, his

11    individual allegations and his allegations on behalf of the alleged class – should be

12    dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, inter alia, on

13    the ground that Plaintiff cannot personally demonstrate an injury in fact sufficient to

14    establish the existence of a case or controversy as required by Article III of the United

15    States Constitution.[1]  Alternatively, under Fed. R. Civ. P. 12(b)(6), Plaintiff's various

16    causes of action should be dismissed for failure to state a claim.  Although his entire

17    complaint is grounded in fraud, Plaintiff fails to plead any of his causes of action with

18    particularity as mandated by Fed. R. Civ. P. 9(b).

19    II.    Plaintiff's Allegations Regarding His Claimed Purchase

20         Plaintiff filed his original complaint in this action on April 18, 2008.  Having had

21    nearly four months to reconsider his original allegations, he filed an FAC on August 11,

22    2008.  Compared side by side, the original and amended complaints are bristling with key

23    inconsistencies.  Moreover, the FAC is internally inconsistent, fails to satisfy Rule 9(b)'s

24    heightened pleading requirements, and is contradicted in several important respects by the

25    evidence Logitech has submitted.  At bottom, the FAC should be dismissed for lack of

26    subject matter jurisdiction or, alternatively, for failure to state a claim.

---

27    [1] Logitech makes a factual attack on the pleadings as permitted under Rule 12(b)(1), and

28        therefore submits evidence in support of its Rule 12(b)(1) motion.

1    Plaintiff, "a resident of the State of Florida," claims he "purchased an H1000

2    Remote in or about late February 2008." FAC, ¶ 6. Plaintiff alleges he "owned a more

3    expensive and complex universal remote prior to purchasing the H1000," and that although

4    "he liked some of [its] features" it lacked "Z-Wave functionality." FAC, ¶ 16. Plaintiff

5    alleged in his original complaint that he "wanted the Z-Wave feature in his new remote."

6    Compl., ¶ 16. By changing his allegation to claim that he "sought to purchase a remote

7    with the Z-Wave feature," (FAC, ¶ 16), the FAC creates a measure of ambiguity as to

8    whether Plaintiff truly "wanted" a Z-Wave remote in the first instance. That said, it is at

9    this point that Plaintiff's story begins irreparably to unravel.

10    Plaintiff originally claimed that he "research[ed] the Logitech website" before he

11    bought his H1000. Compl., ¶ 16. He claims that he then "decided that the Logitech H1000

12    remote would best suit his needs, largely because Z-Wave was on *(sic)* of the advertised

13    features of the H1000 Remote." Notably, however, the FAC eschews any claim that

14    Plaintiff actually "researched" the Logitech website pre-purchase, instead alleging only that

15    Plaintiff "went to the Logitech website" before buying his H1000—and then only to

16    "confirm" what he had allegedly been told by the H1000's private seller; i.e., that the

17    H1000 had "full Z-Wave functionality."

18    Although seemingly innocuous at first blush, the FAC's failure to re-allege that

19    Plaintiff "researched the Logitech website" before buying his H1000 underscores a fatal

20    inconsistency in Plaintiff's original story. Specifically, as alleged in his original and

21    amended complaints, it was not until after Plaintiff purchased his H1000 that he "began to

22    research the issue [of the H1000's true properties] online and found that he was not the only

23    consumer frustrated by the lack of Z-Wave," (Compl., ¶ 18; FAC, ¶ 20), and that

24    "[n]umerous identical complaints with respect to H1000 Remotes can be found all over the

25    internet." Compl., ¶ 31; FAC, ¶ 33. (Emphasis added.) Among the "few verbatim excerpts

26    from various web forums" Plaintiff includes in his original and amended complaints is an

27    excerpt from a posting on Logitech's website purportedly submitted by an owner of an

28

DEFENDANT LOGITECH, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS
FIRST AMENDED COMPLAINT
Case No. C 08-02041 MMC

1  H1000 claiming to be "very upset about Logitech's announcem[en]t to drop z-wave [for the

2  H1000]." Compl., ¶ 31 n. 4; FAC, ¶ 33 n. 4. Plaintiff's original and amended complaints

3  omit a fact of critical significance in this regard—i.e., that the aforementioned consumer

4  complaint on which the FAC necessarily relies indicates that it was posted on Logitech's

5  website beginning June 6, 2007; i.e., a date more than eight months before Plaintiff

6  allegedly bought his H1000. See Logitech's Request for Judicial Notice ("RJN"), at 5, ¶ 2.

7        Also posted in the same Logitech website message board "thread" is a critical

8  disclosure by Logitech that it had "made the decision not to offer control of Z-Wave

9  compatible lighting and home automation equipment for the Harmony 1000 remote." FAC,

10  ¶ 37 & n. 5. Plaintiff's original and amended complaints likewise omit that Logitech's

11  aforementioned posting bears the date of June 4, 2007—i.e., a date more than eight months

12  before Plaintiff allegedly bought his H1000. See RJN, at 4, ¶ 1.

13        Plaintiff's now twice-alleged claim that he "began to research the issue online" only

14  after he bought his H1000 is largely (if not entirely) contradicted by his original claim that

15  he "research[ed] the Logitech website" before buying his H1000. His original allegation

16  that despite having "research[ed] the Logitech website" pre-purchase he was unable to

17  discover the H1000's limitations concerning Z-Wave – juxtaposed against his claim that

18  merely by "[beginning] to research the issue online" post-purchase he was able to unearth

19  such information – is presumptively implausible. The significance of the June 2007 dates

20  relating to the aforementioned postings on the Logitech website is inescapable. Plaintiff's

21  failure on two separate occasions to include the critically important June 2007 dates in his

22  pleadings undercuts substantially each of his claims.

23        Yet another dubious difference between Plaintiff's original and amended pleadings

24  is that his original complaint fails to allege, even in general terms, the identity of the seller

25  from whom he purportedly purchased his H1000, or whether he purchased it in new or used

26  condition. By contrast, in an apparent attempt to convey the appearance of pleading factual

27  allegations with greater specificity, Plaintiff newly alleges in his FAC that: he "purchased

28

1    the H1000 remote from another individual who owned the H1000 remote [and was its

2    "original purchaser"] but who had not yet used it" (FAC, ¶ 17); "[w]hen the original

3    purchaser bought the H1000, he bought it in part because of its purported Z-Wave

4    functionality" (Id.); "[w]hen the original purchaser sold the H1000 to [the Plaintiff,] the

5    original purchaser did not know that, despite Logitech's advertising Logitech's

6    advertisements to the contrary, Z-Wave functionality was, in reality, not supported by

7    Logitech" (Id.); "[r]elying on Logitech's advertisements, the original purchaser specifically

8    told [Plaintiff] that the H1000 had Z-Wave functionality" (Id.); "[he] went to Logitech's

9    website to confirm the Z-Wave function and to learn more about it before buying the

10   H1000 from the original purchaser" (FAC, ¶ 18); "[a]t the time, Logitech's website

11   confirmed what [Plaintiff] had been told by the original purchaser – that it had full Z-Wave

12   functionality" (Id.); and "[he] then purchased the H1000 in late February for approximately

13   $200." Id.  These new allegations – together with Plaintiff's post-purchase claims –

14   succeed only in raising additional questions about what the specific circumstances and

15   events were that led up to and followed his claimed H1000 purchase.  As such, Plaintiff's

16   FAC fails to satisfy Rule 9(b)'s heightened pleading requirements and cannot be cured on

17   amendment.

18   III.    Argument

19           A.    Legal Standard

20                   1.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

21           In a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1),

22   the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim.

23   Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

24   Accord, Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986).  A plaintiff in federal court

25   who asserts claims under California law must satisfy the requirements of Article III of the

26   United States Constitution including the "case or controversy" requirement.  See, e.g.,

27   Warth v. Seldin, 422 U.S. 490, 498 (1975) ("[A] threshold question in every federal case

28

1    [is] whether the plaintiff has stated a 'case or controversy' between himself and the

2    defendant within the meaning of Article III"); Lujan v. Defenders of Wildlife, 504 U.S.

3    555, 560-61 (1992) (to demonstrate constitutional standing, a plaintiff must prove (1) that

4    he or she has suffered an injury in fact—"an invasion of a legally protected interest which is

5    (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"

6    and that "affect[s] the plaintiff in a personal and individual way"; (2) a causal connection

7    between the injury and the conduct complained of—that the injury is fairly traceable to the

8    challenged action of the defendant; and 3) that it is likely, as opposed to merely speculative,

9    that the injury will be redressed by a favorable decision.[2]

10          A motion to dismiss for lack of subject matter jurisdiction may be "facial or

11   factual." See, e.g., Alperin v. Vatican Bank, 2007 WL 4570674, at *2 n. 1 (N.D. Cal. Dec.

12   27, 2007) (Chesney, J.) (citing Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). In a

13   factual attack on the pleadings, as here, "the moving party challenges the truth of the

14   allegations with extrinsic evidence such as affidavits," and "the opposing party must

15   respond with affidavits or other evidence to satisfy its burden of establishing subject matter

16   jurisdiction." Alperin v. Vatican Bank, 2007 WL 4570674, at *2 n. 1 (citing Safe Air for

17   Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). See also, Thornhill Publ'n Co.

18   v. Gen. Tel. & Elecs. Corp., 594 F.2d at 733 ("where the jurisdictional issue is separable

19   from the merits of the case, the judge may consider the evidence presented with respect to

20   the jurisdictional issue and rule on that issue, resolving factual disputes if necessary

21   (citations omitted). . . "[n]o presumptive truthfulness attaches to plaintiff's allegations, and

22   the existence of disputed material facts will not preclude the trial court from evaluating for

23   itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of

24   [2] "In a class action, the focus is on whether the person invoking federal jurisdiction

25   'personally has suffered some actual or threatened injury,' Valley Forge Christian Coll. v.
     Am. United for Separation of Church & State, Inc., 454 U.S. at 472, and not on whether a

26   class member allegedly has been harmed. Simon v. E. Ky. Welfare Rights Org., 426 U.S.
     26, 40 n. 20 (1976) ('[E]ven named plaintiffs who represent a class must allege and show

27   that they personally have been injured, not that injury has been suffered by others,
     unidentified members of the class to which they belong and which the purport to

28   represent.") (citations omitted).'"

1    proof that jurisdiction does in fact exist") (citation omitted).

2                    2.    Motion to Dismiss for Failure to State a Claim

3         A Rule 12(b)(6) motion tests the legal sufficiency of the complaint's claims. See,

4    e.g., Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). To survive a

5    motion to dismiss, however, a plaintiff must allege facts that are enough to raise his or her

6    right to relief "above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955,

7    1964-65 (2007). A motion to dismiss should be granted where the plaintiff fails to proffer

8    "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v.

9    Twombly, 127 S. Ct. at 1974. Dismissal can be based on lack of a cognizable legal theory

10   or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v.

11   Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). "All allegations of material fact

12   are taken as true and construed in the light most favorable to plaintiff. However,

13   conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion

14   to dismiss for failure to state a claim." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140

15   (9th Cir. 1996). See also, In re Portal Software, Inc. Securities Litigation, 2005 WL

16   1910923, at *5 (N.D. Cal. Aug. 10, 2005) (where "a plaintiff fails to attach to the complaint

17   the documents on which the complaint is based, a defendant may attach such documents to

18   its motion to dismiss for the purpose of showing that the documents do not support

19   plaintiff's claim") (citing In re Autodesk, Inc. Sec. Litig., 132 F.Supp.2d 833, 837 (N.D.

20   Cal. 2000) (a court may thereby consider the full text of a document that the plaintiff's

21   complaint only partially quotes).

22                    3.    Applicability of Rule 9(b)

23        Where a plaintiff brings fraud-based claims, Rule 9(b) requires the plaintiff to plead

24   "'with particularity' the time and place of the fraud, the statements made and by whom

25   made, an explanation of why or how such statements were false or misleading when made,

26   and the role of each defendant in the alleged fraud." Snyder v. Ford Motor Co., 2006 WL

27   2472187, at *2 (N.D. Cal. Aug. 24, 2006) (Chesney, J.) (citing, inter alia, In re GlenFed,

28

1  Inc. Sec. Litig., 42 F.3d 1541, 1547-49 and n. 7 (9th Cir. 1994) (en banc).

2      Thus, "[w]here the allegations in support of a claim fail to satisfy the heightened

3  pleading requirements of Rule 9(b), the claim is subject to dismissal." Snyder v. Ford

4  Motor Co., 2006 WL 2472187, at *2 (citing Vess v. Ciba-Geigy Corp USA, 317 F.3d 1097,

5  1103-04 (9th Cir. 2003) (holding that if the complaint alleges "a unified course of

6  fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim * *

7  * the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that

8  claim as a whole must satisfy the particularity requirement of Rule 9(b)"). See also, In re

9  Portal Software, Inc. Securities Litigation, 2005 WL 1910923, at *16 (where "the factual

10 allegations upon which the entire complaint rests allege knowing, reckless, and willful

11 conduct," plaintiffs' "artful attempt to avoid [Rule 9(b)'s particularity] requirement" by

12 selectively alleging negligence constituted "nominal efforts [that were] unconvincing where

13 the gravamen of the complaint is plainly fraud") (citation omitted); Meridian Project Sys.,

14 Inc. v. Hardin Constr. Co., LLC, (E.D. Cal. 2005) ("It is well settled in the Ninth Circuit

15 that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s

16 particularity requirement").

17     The FAC alleges "a unified course of fraudulent conduct" within the meaning of

18 Vess v. Ciba-Geigy Corp USA, supra.  As such, the entire FAC is subject to Rule 9(b)'s

19 heightened pleading requirements.  Plaintiff's core allegation is that Logitech knowingly or

20 recklessly made affirmative misrepresentations and concealed material information

21 regarding the H1000's Z-Wave functionality; see, e.g., FAC ¶ 4 ("Logitech sold the H1000

22 Remotes knowing that, contrary to the promises Logitech made in its marketing materials,

23 the H1000 Remotes lacked the Z–Wave feature."); FAC, ¶ 43(c) ("Logitech affirmatively

24 misrepresented and concealed material information regarding the existence of Z-Wave

25 technology in the H1000 Remotes at all times"); and so forth.  Furthermore, Plaintiff re-

26 alleges and incorporates by reference, inter alia, all of the FAC's core factual allegations

27 (including the FAC's fraudulent concealment allegations) into each of his causes of action.

28

1   Thus, by alleging a "unified course of fraudulent conduct, the entire FAC is subject to Rule

2   9(b)'s heightened pleading requirements. Moreover, where (as here) the plaintiff could not

3   possibly cure Rule 9(b) deficiencies by alleging other facts, dismissal without leave to

4   amend it is not an abuse of discretion. See, e.g., Vess v. Ciba-Geigy Corp USA, 317 F.3d

5   at 1107 (citations omitted).

6   IV.    Plaintiff's Claims Do Not Present a "Case" or "Controversy" Under Article III

7          The FAC should be dismissed in its entirety – including both its individual and class

8   allegations – under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff's

9   claims do not present a "Case" or "Controversy" under Article III of the Constitution.

10         A.     Plaintiff Cannot Show Injury In Fact Because California Law Does Not

11                Apply to a Non-Resident's Injury Caused By Out-of-State Conduct

12         As explained in Part I(A) above, a plaintiff in federal court must demonstrate

13  constitutional standing by first proving that he or she has personally suffered an injury in

14  fact—"an invasion of a legally protected interest which is concrete and particularized."

15  Each of Plaintiff's causes of action arises under state law. To the extent state law does not

16  recognize Plaintiff's standing, he would lack a "legally protected interest" and would

17  therefore lack Article III standing. See, e.g., Cattie v. Wal-Mart Stores, Inc., 504 F.Supp.2d

18  939, 943 (S.D. Cal. 2007).

19         California law in general incorporates a presumption against the extraterritorial

20  application of its statutes. See, e.g., Churchill Village, L.L.C. v. Gen. Elec. Co., 169

21  F.Supp.2d 1119, 1127 (N.D. Cal. 2000) (citing Diamond Multimedia Sys., Inc. v. Super.

22  Ct., 19 Cal.4th 1036,1060 n. 20 (1999). "Accordingly, we do not construe a statute as

23  regulating occurrences outside the state unless a contrary intention is clearly expressed or

24  reasonably can be inferred from the language or purpose of the statute. [Citation]."

25  Norwest Mortgage, Inc. v. Super. Ct., 72 Cal.App.4th 214, 222 (1999).

26         Specifically with respect to the CLRA, Cal. Civ. Code §§ 1750, et seq. does not

27  support the claims of non-residents alleging injury caused by out-of-state conduct. See,

28

DEFENDANT LOGITECH, INC.'S MEMORANDUM
                                                      IN SUPPORT OF ITS MOTION TO DISMISS
                                                      FIRST AMENDED COMPLAINT
                                                      Case No. C 08-02041 MMC

1   e.g., Nordberg v. Trilegiant Corp., 445 F.Supp.2d 1082, 1096 (N.D. Cal. 2006) (certain of

2   the named plaintiffs, who were non-California residents, lacked standing to assert claims

3   under the CLRA because they alleged injury caused by conduct occurring outside of

4   California); accord, Cattie v. Wal-Mart Stores, Inc., 504 F.Supp.2d at 949 (noting generally

5   that "a non-California plaintiff has no standing to sue under the CLRA for a transaction

6   having no connection with California").

7         The UCL and FAL likewise do not support the claims of non-residents alleging

8   injury caused by out-of-state conduct.[3] See Norwest Mortgage, Inc. v. Super. Ct., 72

9   Cal.App.4th at 223, 226 (the UCL does not "encompass claims for injuries suffered by non-

10   California residents caused by conduct occurring outside of California. . . [t]o apply its law

11   constitutionally to the claims of nonresident class members, the forum state must have a

12   significant contact or significant aggregation of contacts to the claims asserted by *each*

13   *member* of the plaintiff class ....") (emphasis in original); Churchill Village, L.L.C. v. Gen.

14   Elec. Co., 169 F.Supp.2d 119, 127 (N.D. Cal. 2000) (noting that the FAL "contains

15   language that could be interpreted to limit the statute's extraterritorial application,"

16   specifically, Cal. Bus. & Prof. Code § 17500, which prohibits false or misleading

17   statements made "before the public in this state" and "from this state before the public in

18   any state").  Similarly, the reach of Cal. Civ. Code § 1710 (the statutory tort of fraud) does

19   not extend to claims by non-residents alleging injury caused by out-of-state conduct, as it

20   contains no "contrary intention [that] is clearly expressed or [that] reasonably can be

21   inferred from [its] language or purpose." Diamond Multimedia Sys., Inc. v. Super. Ct., 19

22   Cal.4th at 1060 n. 20.

23

24   ———————————

25   [3] Plaintiff's common law claims are based on the same facts specifically pleaded with
     respect to his statutory claims, and are completely derivative therefrom.  Accordingly,

26   they should be subject to dismissal on the same grounds.  See, e.g., Mitchell v. National
     Auto. & Casualty Ins. Co., 38 Cal.App.3d 599, 606 (1974) ("when a common count is

27   based upon the same facts specifically pleaded in another count which is subject to
     demurrer [in California state court], the common count is likewise subject to demurrer").

28

1    Moreover, as relevant here, a California court's assumption of jurisdiction over non-

2    California residents' claims that are unconnected to California also "raises significant due

3    process problems." Norwest, at 225 (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797,

4    810-11 (1985)). Thus, "the existence of personal jurisdiction over the defendant does not

5    alone permit application of the forum law to the claims of nonresident plaintiffs." Norwest,

6    at 226. Additionally, heightened due process concerns exist where non-residents alleging

7    injury caused by out-of-state conduct have "no expectation that California law would

8    govern their disputes with [the defendant]. Id., at 227 n. 16.

9    Plaintiff here asserts that California law applies to his claims. FAC, ¶¶ 13-15. In

10   reality, however, Plaintiff is a non-California resident who alleges out-of-state injury

11   caused by out-of-state conduct. Accordingly, under Norwest and its progeny, California

12   law cannot be applied constitutionally to his claims. Because Plaintiff lacks standing to

13   invoke California law, he lacks a "legally protected interest" necessary to demonstrate

14   "injury in fact." As such, Plaintiff cannot state a "case" or "controversy" between himself

15   and Logitech as required under Article III of the Constitution. Nor can Plaintiff acquire

16   standing to sue Logitech merely by bringing his claims as a class action on behalf of others

17   whom he alleges do have standing. See, e.g., Allee v. Medrano, 416 U.S. 802, 828-29

18   (1974) (Burger, J., concurring in part and dissenting in part) ("In particular, a named

19   plaintiff cannot acquire standing to sue by bringing his action on behalf of others who

20   suffered injury which would have afforded them standing had they been named plaintiffs; it

21   bears repeating that a person cannot predicate standing on injury which he does not

22   share[,][as] [s]tanding cannot be acquired through the back door of a class action").

23   As Logitech's evidence demonstrates, there is no constitutional nexus between

24   California and Plaintiff's claims against Logitech. See generally, Declaration of Peter J.

25   Evans, Director, Harmony Customer Experience & Support for Logitech ("Evans Decl.")

26   (attached hereto as Exhibit 1). Not surprisingly, Plaintiff fails to allege that the at-issue

27   H1000 ever entered California, or that he purchased it in California. In fact, the at-issue

28

1    H1000 was engineered in Canada, manufactured in China, and shipped to Logitech's

2    Mississippi distribution center. Evans Decl., ¶¶ 5-6; 21(a)-(b). Thereafter, USER "A" first

3    connected it to Logitech's Canada-based Product Support System from a computer in

4    Riverview, Florida on February 17, 2007, and registered it as a new purchase. Evans Decl.,

5    ¶¶ 21(c)-(h). Subsequently, USER "B" first connected the at-issue H1000 to Logitech's

6    Product Support System from a computer in Tampa, Florida on January 5, 2008. Evans

7    Decl., ¶¶ 21(i)-(l). Thereafter, Plaintiff, a Florida resident, allegedly purchased the at-issue

8    H1000 in "late February 2008." FAC ¶ 6. See also, Evans Decl., ¶¶ 21(m)-(t).

9       By his own admission, Plaintiff did not purchase the at-issue H1000 either directly

10   from Logitech itself or indirectly from any of Logitech's Channel Partners. Although

11   Plaintiff first connected the at-issue H1000 to Logitech's Product Support System on

12   February 27, 2008 after he purchased it, (Evans Decl., ¶¶ 21(m)-(n)), he never formed any

13   pre-purchase business relationship with Logitech.[4] Plaintiff's only pre-purchase contact

14   with Logitech was as a "free rider"[5] to Logitech's website, purportedly to "confirm" what

15   he had been told by an unspecified third party who is not alleged to be a California resident

16   and who was purportedly attempting to sell a previously purchased H1000 to the Plaintiff.

17      Regardless, because Logitech and its Channel Partners only sell new H1000

18   products, all of Logitech's advertising and marketing efforts relating to the H1000 via the

19   Logitech website are directed exclusively towards potential and actual purchasers of new

20   H1000s. Evans Decl., ¶¶ 11-13. Thus, whatever website information Plaintiff allegedly

21   _____

[4] As for his post-purchase relationship with Logitech. Plaintiff successfully connected his
22   H1000 (on February 27, 2008) and a number of non-Z-Wave accessories (on February 28,
     2008) to Logitech's Canada-based Product Support System. Plaintiff claims that after he
23   attempted unsuccessfully (on March 18, 2008) to use certain "Z-Wave compatible
     accessories" that he purchased for use with his H1000, he "sent an email to Logitech's
24   customer service address, listed on their *(sic)* website, inquiring as to the problem he was
     experiencing, [but that] he "has still not received a response from Logitech and is unable
25   to use the remote as he intended." FAC, ¶¶ 20-21. Plaintiff does not allege, nor can he,
     that any of his post-purchase contact with Logitech involved Logitech's California-based
26   operations. In any event, Logitech has no record of receiving any such email.

27   [5] See, e.g., Note, Leegin's Unexplored "Change In Circumstance": The Internet and Resale
     Price Maintenance, 121 Harv. L. Rev. 1600, 1614 (2008) ("consumers may free ride on
28   Internet retailers' services . . . such as full side-by-side comparisons of products").

1   read pre-purchase was not in any manner directed toward or intended to influence him

2   relative to the previously purchased H1000 that he ultimately acquired. Accordingly, for all

3   of the reasons set forth herein, no statutory or constitutional basis exists for extending the

4   reach of California law to Plaintiff's claims against Logitech.

5       **B.   Plaintiff Cannot Show Injury in Fact Because He Lacks Standing to Bring**

6            **His Statutory and Common Law Claims**

7       As demonstrated in Parts V(A) through (E) below, Plaintiff lacks standing to assert

8   his various statutory and common law claims.  Because state law does not recognize

9   Plaintiff's standing, he lacks a "legally protected interest" and therefore cannot demonstrate

10  that he has suffered an "injury in fact" sufficient to establish Article III standing.  Cattie v.

11  Wal-Mart Stores, Inc., 504 F.Supp.2d at 943.

12      **C.   Plaintiff Cannot Show His Alleged Injury is Fairly Traceable to Logitech**

13      For the reasons detailed in Part IV(A) above, Plaintiff cannot show that his alleged

14  injury is fairly traceable to Logitech.  It bears repeating that Plaintiff did not purchase the

15  at-issue H1000 either directly from Logitech itself or from any of Logitech's Channel

16  Partners.  Evans Decl., ¶ 21(a)-(t).  Logitech derived no monetary benefit whatsoever from

17  Plaintiff's purely private transaction with a third-party seller.  Evans Decl., ¶¶ 9, 21(t).  The

18  entirety of Plaintiff's pre-purchase relationship with Logitech is a gratuitous visit by

19  Plaintiff to the Logitech website as a "free rider" – nothing else.  He did not seek to

20  purchase anything from Logitech or any of the businesses through which Logitech sells

21  H1000s.  Moreover, Plaintiff does not even allege specific information concerning the

22  precise content or timing of the purportedly offending website statement(s), or that he

23  specifically relied on them or that they specifically cause him any damage.  Under the

24  circumstances, Plaintiff's alleged injury is not "fairly" traceable to Logitech, and for this

25  reason alone Plaintiff cannot demonstrate constitutional standing.

26  **V.   The FAC Fails to State a Claim as to Any of its Causes of Action**

27      Accepting all allegations of material fact in the FAC as true and construing them in

28

DEFENDANT LOGITECH, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS
FIRST AMENDED COMPLAINT
Case No. C 08-02041 MMC

1    the light most favorable to the Plaintiff, and without regard to any of the evidence submitted

2    by Logitech in support of its Rule 12(b)(1) motion, the FAC should be dismissed in its

3    entirety – including both its individual and class allegations – for failure to state a claim.

4    As to each cause of action, the FAC fails to proffer "enough facts to state a claim to relief

5    that is plausible on its face." Twombly, 127 S. Ct. at 1974.  Further, the FAC fails to

6    satisfy Rule 9(b)'s requirement that a complaint alleging "a unified course of fraudulent

7    conduct" be pleaded with particularity in its entirety.  Vess, 317 F.3d at 1103-04.

8         A.    Plaintiff Fails to State a Claim for Relief under the CLRA

9              1.    Plaintiff fails to allege a "transaction" vis-à-vis Logitech "intended to

10                  result or which result[ed]" in the sale of goods or services.

11        The CLRA defines the term "transaction" as "an agreement between a consumer

12   and any other person, whether or not the agreement is a contract enforceable by action, and

13   includes the making of, and the performance pursuant to, that agreement."  Cal. Civ. Code

14   § 1761(e).  Section 1770 of the CLRA proscribes certain enumerated methods of unfair

15   competition and unfair or deceptive acts or practices "undertaken by any person in a

16   transaction intended to result or which results in the sale of goods to any consumer."  Cal.

17   Civ. Code § 1770(a).  Under Section 1780(a), relief is available to consumers who suffer

18   "damage as a result of" section 1770 violations.  Plaintiff fails to state a claim under the

19   CLRA on the ground that he fails to allege a "transaction" between himself and Logitech

20   "intended to result or which result[ed]" in the sale of goods or services within the meaning

21   of the CLRA.  Furthermore, he would be unable to do so on amendment.

22        In Nordberg v. Trilegiant Corp., supra, the Court, held there must be an underlying

23   "agreement" before a plaintiff can state a claim under the CLRA.  Id.  With respect to

24   plaintiff Nordberg, the Court found that an "agreement" resulted in the sale of services to

25   her when the defendants billed her for membership services. She was therefore able to

26   allege a "transaction" under the CLRA.  Id.  However, the Court found that plaintiff Smith

27   failed to prove the existence of an "agreement," holding that "it is the express *lack* of

28

701216963v1                        – 14 –

1    agreement and the subsequent refusal to fully refund the unauthorized charges that lie at the

2    heart of Smith's complaint." Id.

3        Here, Plaintiff fails to allege any "agreement" between himself and Logitech either

4    directly or via any affiliated retailer or other affiliated seller with respect to his H1000

5    purchase. Rather, the only "agreement" Plaintiff alleges is his purchase of the at-issue

6    H1000 from its purported "original purchaser." FAC, ¶¶ 17-18. Thus, Plaintiff alleges no

7    "transaction" within the meaning of the CLRA between himself and Logitech "intended to

8    result or which result[ed]" in the sale of an H1000 to him. As Plaintiff admits, his only pre-

9    purchase contact with Logitech was as a "free rider" to Logitech's website – which he

10    visited on his own volition – and then only "to confirm the Z-Wave function and to learn

11    more about it before buying the H1000 from the original purchaser." FAC, ¶ 18.

12        Plaintiff fails to satisfy Rule 9(b)'s heightened pleading requirements in that he does

13    not identify the specific website representation(s), if any, that he alleges "confirmed" that

14    the H1000 "had full Z-Wave functionality" and, as discussed in Part II above, he fails to

15    demonstrate with particularity that he didn't already know of the H1000's true properties

16    before he purchased it.[6] Additionally, Plaintiff does not plead any facts regarding the

17    specific circumstances – i.e., the "what," "who," "when," "where," and "how" –

18    surrounding the "advertisements" that the as-yet-unidentified male "original purchaser"

19    purportedly relied upon in telling the Plaintiff that the H1000 "had full Z-Wave

20    functionality." Futhermore, Plaintiff does not allege any facts indicating that Logitech ever

21    derived a monetary benefit either directly or indirectly from his purchase of the H1000.

22    Moreover, Logitech never receives a monetary benefit, either directly or indirectly, with

23    respect to any purely private transaction between two individuals involving the sale of a

24    previously purchased H1000. Therefore, on this additional basis, Plaintiff lacks standing to

25    _____

26    [6] Although Rule 9(b)'s heightened pleading requirements "may be relaxed as to matters
     peculiarly within the opposing party's knowledge," and "an exception [to such Rule
     9(b)'s requirements exists where, as in cases of corporate fraud, the plaintiffs cannot be

27    expected to have personal knowledge of the facts constituting the wrongdoing," see, e.g.,
     Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987), Plaintiff's claims

28    do not present such an exception, as demonstrated in Parts II and V(C) herein.

DEFENDANT LOGITECH, INC.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS
FIRST AMENDED COMPLAINT
Case No. C 08-02041 MMC

1    bring a CLRA claim.

2            2.     Plaintiff's CLRA claim fails to allege causation and reliance

3            CLRA actions may be bought only by a consumer "who suffers any damage *as a*

4    *result of the use or employment"* of a proscribed method, act, or practice.  Cal. Civ. Code

5    § 1780(a) (emphasis added); Aron v. U-Haul Co. of Cal., 143 Cal.App.4th , 796, 802-03

6    (2006); see also,  Buckland v. Threshold Enterprises, Ltd. 155 Cal.App.4th 798, 809 (2007)

7    ("This language does not create an automatic award of statutory damages upon proof of an

8    unlawful act.  Relief under the CLRA is specifically limited to those who suffer damage,

9    making causation a necessary element of proof") (citing Wilens v. TD Waterhouse Group,

10    Inc. (2003) 120 Cal.App.4th 746, 754, 15 Cal.Rptr.3d 271).  Accordingly, "plaintiffs in a

11    CLRA action [must] show not only that a defendant's conduct was deceptive but that the

12    deception caused them harm." Mass. Mut. Life Ins. Co. v. Super. Ct., 97 Cal.App.4th

13    (2002); Cf. Anunziato v. eMachines, Inc., 402 F.Supp.2d 1133, 1137 (C.D.Cal. 2005)

14    (acknowledging the CLRA's reliance requirement); see also, Cattie v. Wal-Mart Stores,

15    Inc., 504 F.Supp.2d at 946 ("In a claim for false advertising, one of these requirements is

16    reliance.  California requires a plaintiff suing under the CLRA for misrepresentations in

17    connection with a sale to plead and prove she relied on a material misrepresentation")

18    (citing Caro v. Procter & Gamble Co., 18 Cal.App.4th 644, 668 (1993) (holding no material

19    misrepresentation was made to plaintiff suing under the CLRA because he did not believe

20    the allegedly misleading statement)).

21            Plaintiff fails to allege any specific facts demonstrating that he relied on any

22    purported misrepresentations made by Logitech or the specific content and timing of such

23    purported misrepresentations, nor has he specifically alleged that he suffered damage as a

24    result of any such purported misrepresentations.  In particular, Plaintiff fails to identify the

25    specific website representation(s) that he alleges "confirmed" that the H1000 "had full Z-

26    Wave functionality."  Moreover, although he alleges that he purchased the at-issue H1000

27    after being told by the "original purchaser" that the H1000 "had full Z-Wave functionality"

28

1    and after Logitech's website "confirmed" what the "original purchaser" had him told, he

2    does not expressly allege that he relied in any manner on such representations in deciding to

3    purchase the at-issue H1000.[7] This is of particular concern because, as indicated herein,

4    Plaintiff previously alleged that he "research[ed] the Logitech" before purchasing his

5    H1000.  For the reasons explained in Part II above, Plaintiff's claim that he was unable to

6    discover the H1000's limitations concerning Z-Wave until after he bought his H1000 is

7    presumptively implausible and therefore negates the CLRA claims he seeks to allege.

8         The FAC merely alleges generally that "Logitech made affirmative statements and

9    partial misrepresentations about the H1000 Remotes," (FAC, ¶ 38), and attaches the

10   following as exhibits purportedly describing the H1000 as having the "Z-Wave feature":

11   (1) an undated "website screenshot" from a specific portion of the www.logitech.com

12   website listing "Z-Wave™ Wireless" as one of the H1000's "Highlights" (but not stating

13   that the H1000 had "full Z-Wave functionality") (FAC, ¶ 39 & Ex. A); (2) a press release

14   issued by Logitech on September 12, 2006 in Denver, Colorado announcing the upcoming

15   availability of the H1000 (FAC, ¶ 40 & Ex. B); and (3) Logitech's "Harmony 1000

16   Reviewer's Guide, marked "©2007 Logitech, Inc." (FAC, ¶ 40 & Ex. C).  Notably, Plaintiff

17   does not allege that he saw, read or relied on any of these specific documents.  Nor can he

18   on amendment.  Thus, because the FAC fails to adequately plead reliance and causation

19   with requisite particularity in accordance with Rule 9(b), and for the additional reason that

20   the FAC fails to satisfy Twombly's requirement that a plaintiff proffer "enough facts to

21   state a claim to relief that is plausible on its face," Plaintiff lacks standing to bring his

22   CLRA claims.

23        B.    Plaintiff Fails to State a Claim for Relief under the UCL or FAL

24   _____

25   [7] Certain portions of the FAC recite conclusory mantras to the effect that had Plaintiff
     and/or the proposed class members known the "truth" about the H1000's Z-Wave
26   capability, they would have purchased a different remote or paid less for the ones they
     purchased – e.g., FAC, ¶¶ 65, 67, 96, 112 – or that they "reasonably relied" on Logitech's
27   alleged misrepresentations; e.g., FAC, ¶ 94.  The Court need not "accept as true
     allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable
28   inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

1          1.    <u>Plaintiff's UCL and FAL claims fail to allege causation and reliance</u>

2          For essentially the same reasons as explained in Part V(A)(1) herein with respect to

3    Plaintiff's CLRA claims, the FAC fails to adequately plead reliance and causation under

4    Rule 9(b) with respect to Plaintiff's UCL and FAL claims.  The UCL authorizes lawsuits

5    only by a person "who has suffered injury in fact and has lost money or property as a result

6    of unfair competition." Cal. Bus. & Prof. Code § 17204.  Section 17203 authorizes courts to

7    enjoin unfair competition as follows: "Any person may pursue representative claims or

8    relief on behalf of others only if the claimant meets the standing requirements of Section

9    17204 and complies with Section 382 of the Code of Civil Procedure . . ." The standing

10   requirements of the FAL are identical.  See § 17535.  A plaintiff with standing under the

11   FAL is "any person who has suffered injury in fact and has lost money or property as a

12   result of a violation of this chapter."

13         Accordingly, under the UCL and the FAL, the plaintiff must have spent money, lost

14   money or property, or been denied money to which he or she was entitled, due to unfair

15   business practices or false advertising. <u>See</u> §§ 17204 & 17535; <u>Hall v. Time, Inc.</u>, 158

16   Cal.App.4th 847, 855 (2008) (no standing where, even if plaintiff suffered injury in fact,

17   plaintiff made no causation showing); <u>see also</u>, <u>Laster v. T-Mobile USA, Inc.</u>, 407

18   F.Supp.2d 1181, 1194 (S.D.Cal. 2005) (named plaintiffs, who failed to allege that they saw,

19   read or relied on false or misleading advertisements, lacked standing under the UCL and

20   FAL which, like the CLRA, requires proof of actual reliance and causation).

21         2.    <u>Plaintiff cannot claim restitution under either the UCL or FAL</u>

22         The remedies afforded private plaintiffs under the UCL and FAL are limited to

23   injunctive relief and restitution.  <u>See</u> §§ 17203 & 17535.  These sections only authorize

24   restitution to individuals who have an ownership interest in money paid to the defendants.

25   <u>See</u> <u>Shersher v. Sup. Ct.</u>, 154 Cal.App.4th 1491, 1497-98 (2007) (citing <u>Korea Supply v.</u>

26   <u>Lockheed Martin Corp.</u>, 29 Cal.4th 1134, 1147 (2003) ("<u>Korea Supply</u>").

27         In <u>Shersher</u>, the plaintiff brought a class action against Microsoft Corporation

28

1    alleging that the company's wireless routers, adapters and other similar products were

2    incapable of delivering data at transmission rates of 11 and 54 Mbps, as advertised.

3    Shersher v. Sup.Ct., 154 Cal.App.4th at 1494-95.  Plaintiff had purchased such products

4    from a retailer in Microsoft's chain of distribution.  Id., at 1494.  Relying on Korea

5    Supply's use of the term "directly," Microsoft moved to strike the claim for restitution,

6    which the trial court granted on the ground that the restitution plaintiffs sought to recover

7    "would not replace any money or property that defendants took directly from plaintiff."

8    Shersher v. Sup.Ct., 154 Cal.App.4th at 1498.  In reversing the trial court, the appellate

9    court held:

10           Nothing in the language of Korea Supply suggests that the Supreme Court

11           intended to preclude consumers from seeking the return of money they paid

12           for a product that turned out to be not as represented."  Rather, the holding

13           of Korea Supply on the issue of restitution is that the remedy the plaintiff

14           seeks must be truly "restitutionary in nature"- that is, it must represent the

15           return of money or property the defendant acquired through its unfair

16           practices. . . [The UCL] requires only that the plaintiff must once have had

17           an ownership interest in the money or property acquired by the defendant

18           through unlawful means.  Shersher v. Sup.Ct., 154 Cal.App.4th at 1498.

19           (Emphasis added.)

20           Unlike Microsoft's situation in Shersher, Logitech did not "acquire" any of the

21   Plaintiff's money, either directly or indirectly.  Plaintiff purchased his H1000 from a private

22   individual seller allegedly for $200.  However, he does not allege that Logitech obtained

23   any share of the proceeds from that purely private sale involving a previously purchased

24   H1000.  Plaintiff therefore has no "ownership interest" (within the meaning of Korea

25   Supply and Shersher) in any funds obtained by Logitech.  Because Plaintiff cannot recover

26   any restitution from Logitech, he lacks standing to sue Logitech for monetary relief under

27   either the UCL or FAL.

28

1    C.    <u>Plaintiff Fails to State a Claim for Fraud</u>

2    As discussed more fully in part III(C) above, where a plaintiff brings fraud-based

3    claims, Rule 9(b) requires the plaintiff to "state[] with particularity" the "circumstances

4    constituting fraud." Fed. R. Civ. P. 9(b).  In almost boilerplate fashion, Plaintiff invokes

5    various fraud theories under the general umbrella of deceit / common law fraud in

6    connection with his purchase of the at-issue H1000—i.e., intentional and negligent

7    misrepresentation, and fraudulent concealment/ nondisclosure.  Each of these theories of

8    recovery fails at the threshold on the ground that Plaintiff has not satisfied the heightened

9    pleading standards of Rule 9(b).

10    First and foremost – as the FAC itself recognizes – Logitech disclosed on its own

11    website that it had "made the decision not to offer control of Z-Wave compatible lighting

12    and home automation equipment for the Harmony 1000 remote."  FAC, ¶ 37 & n. 5.

13    Logitech posted this disclosure for all visitors of its website to see.  The disclosure is dated

14    <u>June 4, 2007</u>—i.e., a date more than eight months <u>before</u> Plaintiff purchased his H1000.

15    RJN, at 4, ¶ 1.

16    As discussed above, Plaintiff's original complaint alleged: "After <u>researching</u> the

17    Logitech website, [Plaintiff] decided that the Logitech H1000 Remote would best suit his

18    needs, largely because Z-Wave was on *(sic)* of the advertised features of the H1000.

19    [Plaintiff] purchased an H1000 Remote in late February 2008."  Compl., ¶ 16. (Emphasis

20    added.)  Not surprisingly, the FAC completely abandons Plaintiff's original  claim that he

21    had "research[ed] the Logitech website" before buying the at-issue H1000.  Quite clearly,

22    Plaintiff wants to avoid the obvious adverse inference here—i.e., that he cannot possibly

23    prove any of his fraud claims where it appears that, by virtue of his having "research[ed]"

24    the Logitech website before his purchase, he either knew or with reasonable diligence

25    should have known that the H1000 did not support Z-Wave compatible lighting and home

26    automation equipment.

27    At the same time, the FAC adds allegations regarding the so-called "original

28

– 20 –

1  purchaser" of the at-issue H1000 who was himself an alleged victim of Logitech's

2  misrepresentations and who, in supposed ignorance of the truth about the H1000's Z-Wave

3  capabilities, purportedly repeated the misinformation to the Plaintiff as he was selling the

4  H1000 to the Plaintiff. As discussed in Part V(A)(2) above, the FAC wholly fails to allege

5  any facts regarding the specific circumstances – i.e., the "what," "who," "when," "where,"

6  and "how" – surrounding the "advertisements" that the as-yet-unidentified male "original

7  purchaser" purportedly relied upon in telling the Plaintiff that the H1000 "had full Z-Wave

8  functionality." For example, did the alleged "original purchaser" ever "research"

9  Logitech's website before he sold the at-issue H1000 to the Plaintiff? If so, when did "he"

10  do so in relation to Logitech's June 4, 2007 website posting referenced in paragraph 37 of

11  the FAC? Viewed against this backdrop, each of Plaintiff's fraud claims is fatally flawed.

12             1.    Intentional Misrepresentation

13         The elements of a cause of action for intentional misrepresentation in California are:

14  (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge

15  of falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable

16  reliance; and (5) resulting damage. See, e.g., Agosta v. Astor, 120 Cal.App.4th 596, 603

17  (2004). Plaintiff fails to state a claim for intentional misrepresentation under Rule 9(b)'s

18  heightened pleading requirements, at minimum, on the grounds that he fails to – and cannot

19  on further amendment – adequately allege that Logitech intended to defraud him, or that he

20  justifiably relied on any alleged misrepresentation(s) by Logitech directly or via any third

21  parties such as the alleged "original purchaser." By his own admission, Plaintiff

22  "research[ed]" the Logitech website before purchasing his H1000 from a third party. He

23  therefore cannot claim, plausibly, that he was unaware of the H1000's true properties

24  before he bought his H1000. Under the circumstances, amendment would be futile.

25  Accordingly, Plaintiff's claim for intentional fraud should be dismissed with prejudice.

26             2.    Negligent Misrepresentation

27         A claim for negligent misrepresentation must allege: "(1) misrepresentation of a

28

1   past or existing material fact, (2) without reasonable ground for believing it to be true,

2   (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the

3   truth and justifiable reliance on the misrepresentation by the party to whom it was directed,

4   and (5) resulting damage." Neilson v. Union Bank of California, N.A., 290 F.Supp.2d

5   1101, 1141 C.D. Cal. 2003 (quoting Firoozye v. Earthlink Network, 153 F.Supp.2d 1115,

6   1128 (N.D. Cal. 2001). Plaintiff likewise fails to state a claim for negligent

7   misrepresentation under Rule 9(b)'s heightened pleading requirements, at minimum, on the

8   grounds that he fails to – and cannot on further amendment – adequately allege that he was

9   "ignorant of the truth," or that he justifiably relied on any alleged misrepresentation(s) by

10   Logitech directly or via any third parties such as the alleged "original purchaser."

11            3.    Fraudulent Concealment / Nondisclosure

12        The elements of a cause of action for fraud "based on concealment are: (1) the

13   defendant must have concealed or suppressed a material fact, (2) the defendant must have

14   been under a duty to disclose the fact to the plaintiff, (3) the defendant must have

15   intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the

16   plaintiff must have been unaware of the fact and would not have acted as he did if he had

17   known of the concealed or suppressed fact, and (5) as a result of the concealment or

18   suppression of the fact, the plaintiff must have sustained damage." Snyder v. Ford Motor

19   Co., 2006 WL 2472187, at *2 (N.D. Cal. Aug. 24, 2006) (Chesney, J.) (quoting Lovejoy v.

20   AT&T Corp., 119 Cal.App.4th 151, 157-58 (2004).

21        The FAC alleges that Logitech "fraudulently concealed from and/or intentionally

22   failed to disclose" a material fact; i.e., that the H1000s "do not possess Z-Wave capability."

23   FAC, ¶ 106. Plaintiff further claims that Logitech had a duty to disclose "material facts

24   regarding the true nature of the H1000s, based on the following: (1) "Logitech had

25   exclusive knowledge of the true properties of the H1000 Remotes at the time of sale,"

26   further alleging in this regard that "the lack of Z-Wave technology is latent and not

27   something that Plaintiff or [the putative class] could, in the exercise of due diligence, have

28

1   been discovered independently prior to purchase; (2) Logitech actively concealed "material

2   facts" about the H1000s, further alleging in this regard that "Plaintiff is aware of nothing in

3   Logitech's advertising, publicity, or marketing materials that discloses the truth [about the

4   H1000s], despite ample evidence that Logitech was aware of the problem by virtue of . . .

5   numerous consumer complaints"; and (3) Logitech made and makes partial representations

6   [about the H1000s].  FAC, ¶ 108.  Plaintiff also alleges that Logitech concealed material

7   information in order to induce Plaintiff and [the putative class] "to act thereon," that

8   Plaintiff and [the putative class] justifiably relied to their detriment upon the concealed or

9   nondisclosed facts in that they "would not have purchased (or would have paid less for)

10  their H1000 Remotes," and that Plaintiff and [the putative class] "suffered actual damages"

11  (i.e., purchasing and owning a remote that doesn't perform as promised) as a result of

12  "Logitech's misconduct."  FAC, ¶¶ 110-113.

13          Plaintiff fails to specify any factual basis for these "boilerplate" allegations, which

14  are divorced entirely from reality.  One need look no further than to the FAC itself.  See,

15  e.g., FAC, ¶ 43(d), wherein Plaintiff alleges he is unaware of any instance in which

16  Logitech disclosed "the truth about the [H1000's] lack of Z-Wave technology" to "anyone

17  outside of Logitech until at least November 2007," further alleging that "[s]uch information

18  appears in no [documents], nor on Logitech's website."  (Emphasis added.)  Yet, just a few

19  paragraphs earlier, Plaintiff alleges that Logitech disclosed on its own website [in a

20  document dated June 4, 2007] that it had "made the decision not to offer control of Z-Wave

21  compatible lighting and home automation equipment for the Harmony 1000 remote."  FAC,

22  ¶ 37 n. 5; RJN, at 4, ¶ 1.  In the same vein, the FAC also alleges that Logitech posted on its

23  own website a related consumer complaint, which is dated June 6, 2007.  FAC, ¶ 33 n. 4;

24  RJN, at 5, ¶ 2.  Such blatantly contradictory allegations are, at best, inherently suspect—if

25  not per se inadequate.

26          The fact that the FAC references the two aforementioned Logitech website postings

27  without specifying their telltale June 2007 dates, at the very least, should preclude Plaintiff

28

1   from re-asserting his fraud claims.  Moreover, the very presence of such incomplete and

2   misleading allegations on such a pivotal issue underscores Plaintiff's utter failure to satisfy

3   the heightened pleading requirements of Rule 9(b) with respect to each of his statutory and

4   common law claims, and provides ample justification for this Court to dismiss, at

5   minimum, all of Plaintiff's fraud claims with prejudice.  Cf., Oestreicher v. Alienware

6   Corp., 544 F.Supp.2d 964, 974-75 (N.D. Cal. 2008) (dismissing with prejudice plaintiff's

7   virtually identical fraudulent concealment claim "due to a lack of facts substantiating the

8   fraud," and admonishing, aptly: "Allegations of this nature with respect to all prongs above

9   could be made about any alleged design defect in any manufactured product.  The

10   heightened pleading requirements of Rule 9(b) were designed to avoid exactly this

11   situation").

12        D.    Plaintiff Fails to State a Claim for Breach of Express Warranty

13        A consumer seeking recovery from a manufacturer on the theory of express

14   warranty based upon the manufacturer's advertising materials must prove, at minimum, that

15   he or she relied on  the advertising.  See, e.g., Fundin v. Chicago Pneumatic Tool Co., 152

16   Cal.App.3d 951,957 (1984) (holding that privity was not required between an operator of a

17   drill rig and the drill rig manufacturer, where the drill rig operator purchased a drill rig from

18   a distributor of the manufacturer who, in turn, had previously distributed its sales brochure

19   to the public and to the drill rig operator).  As explained herein, Plaintiff, on his own

20   initiative, visited Logitech's website merely as a "free rider" in order to buy a previously

21   purchased H1000 in a purely private sales transaction.  Plaintiff fails to identify any specific

22   advertisements or marketing materials of Logitech's that Logitech directed to him and

23   which he personally saw, read, or relied on in any in connection with his purchase of the at-

24   issue H1000.  Notably, the best Plaintiff can do is to allude to unspecified information he

25   purportedly saw while "free riding" on Logitech's website in late February 2008 indicating

26   that the H1000 "had full Z-Wave functionality," and to a statement of identical import

27   allegedly made to him by the person who sold him the H1000.  Accordingly, under Rule

28

1   9(b), Plaintiff's breach of express warranty claim fails at the threshold.  Moreover, since he

2   has not alleged plausible facts as required by <u>Twombly</u>, Plaintiff cannot establish – per

3   California Commercial Code § 2313(1) – that "full Z-Wave functionality" was part of the

4   basis of any bargain between himself and the alleged "original purchaser."

5          E.    <u>Plaintiff Fails to State a Claim for Unjust Enrichment</u>

6          A claim for unjust enrichment requires pleading "the receipt of a benefit and the

7   unjust retention of the benefit at the expense of another."  <u>Lectrodryer v. Seoulbank</u>, 77

8   Cal.App.4th 723, 726 (2000).  There is a split of authority among California courts as to

9   whether unjust enrichment can be maintained as an independent cause of action or whether

10  it is instead "merely an equitable remedy."  <u>See</u>, <u>e.g.</u>, <u>Parrish v. National Football League</u>

11  <u>Players Ass'n</u>, 534 F.Supp.2d 1081, 1100 (N.D. Cal. 2007) (holding that the plaintiffs failed

12  to plead that they conferred a benefit on defendants which they unjustly retained, as they

13  did not allege that the defendants received anything from plaintiffs' status as former NFL

14  players).  See also, <u>Dinosaur Dev., Inc. v. White</u>, 216 Cal.App.3d 1310, 1314-15 (1989)

15  (unjust enrichment is synonymous with the remedy of restitution).  Since Plaintiff cannot

16  state a claim for restitution under the UCL or FAL, his unjust enrichment claim necessarily.

17  VI.    <u>Conclusion</u>

18         Based on the foregoing, Logitech respectfully requests that this Court grant its

19  motion to dismiss with prejudice each cause of action in Plaintiff's FAC for lack of subject

20  matter jurisdiction or, in the alternative, for failure to state a claim.

21                                Respectfully submitted,

22  DATED: August 28, 2008         PILLSBURY WINTHROP SHAW PITTMAN LLP

23

24                                By:  /s/  Philip S. Warden
                                       Philip S. Warden
25                                     Daveed A. Schwartz
                                  Attorneys for Defendant
26                                LOGITECH, INC.

27

28