1  Jonathan D. Selbin (State Bar No. 170222)
   jselbin@lchb.com
2  Kristen E. Law (State Bar No. 222249)
   klaw@lchb.com
3  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
4  San Francisco, CA 94111-3339
   Telephone: (415) 956-1000
5  Facsimile: (415) 956-1008

6  David P. Meyer (Ohio Bar #0065205) (*pro hac vice*)
   dmeyer@dmlaws.com
7  Matthew R. Wilson (Ohio Bar #0072925) (*pro hac vice*)
   mwilson@dmlaws.com
8  DAVID P. MEYER & ASSOCIATES, CO., LPA
   1320 Dublin Road, Suite 100
9  Columbus, OH 43215
   Telephone: (614) 224-6000
10 Facsimile: (614) 224-6066

11 *Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR FULFORD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOGITECH, INC., a California corporation,<br><br>Defendant. | Case No. 08-cv-02041 MMC<br><br>[~~PROPOSED~~] **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

On March 5, 2010, this Court held a Final Fairness Hearing on the Settlement reached between Defendant Logitech, Inc. ("Logitech") and Plaintiff Arthur Fulford, on behalf of himself and a nationwide Class of owners of Harmony® 1000 Universal Remote ("H1000") devices who were disappointed with the H1000's lack of the Z Wave feature, which allows customers to control electronic components without a line of sight between the component and the control. The Settlement provides a replacement remote control device—Logitech's Harmony® 890 Advanced Universal Remote ("H890")—for any Class member disappointed in

the H1000's lack of Z Wave. The H890 is the only remote control device in Logitech's current inventory that has Z Wave.

On October 15, 2009, this Court entered an Order (1) Granting Preliminary Approval to the Proposed Settlement; (2) Provisionally Certifying the Proposed Settlement Class; (3) Approving the Proposed Notice Plan and Forms of Notice; and (4) Scheduling the Final Fairness Hearing for March 5, 2010 (the "Preliminary Approval Order").

On February 19, 2010, in conjunction with Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, Dean Gossi, Senior Manager, CS&S Program Management, of the Remote Controls Business Unit for Logitech, filed a declaration confirming the timely distribution to the Settlement Class of the Settlement Notice and Claim Form as required by the Preliminary Approval Order. Of the approximately 82,091 Class members who received notice, only 12 objected and 10 opted out. A list of Class Members who opted out is attached to this Order as Exhibit A.

On March 5, 2010, this Court held a fully noticed formal fairness hearing to consider whether to grant final approval to the Settlement, and to consider Class Counsel's application for an award of attorneys' fees and costs. The Court conducted a hearing, during which the Court heard argument from the parties. No class member appeared.

Having read, reviewed and considered the papers filed with this Court, the oral arguments of counsel, and the written and oral objections and comments of all those who have appeared in these proceedings, and based on its familiarity with this matter, this Court finds and concludes as follows:

## I. THE CLASS NOTICE COMPLIED WITH THIS COURT'S ORDERS AND APPLICABLE LEGAL STANDARDS

On October 15, 2009, this Court ordered that Class Notice be disseminated in substantially the form submitted by Plaintiff on October 14, 2009, and further specified the manner in which such dissemination should occur. Based upon the uncontroverted proof that Logitech submitted to the Court on February 19, 2010, this Court finds that the settling parties have complied with the Court's Orders, as follows:

The Court-approved Notice was emailed directly to approximately 96,403 Class members whose email addresses were available through Logitech's product registration information, and 81,422 (84.5%) of these emails were delivered successfully. Alternative email addresses led to the successful delivery of the Notice to an additional 329 Class members. The Notice was also direct mailed to 340 Class members whose email addresses were unknown or out of date. Thus, a total of approximately 82,091 (85%) Class members were notified of the proposed Settlement by email or mail. Logitech also provided notice of the Settlement Agreement to the U.S. Attorney General and the Attorney Generals of all fifty states and the District of Columbia, as required by 28 U.S.C. § 1715(b).

The Court finds and concludes that the Notice program as a whole provided the best practicable notice to the members of the Class under the circumstances, and satisfies the requirements prescribed by the United States Supreme Court. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v Carlisle and Jacqueline*, 417 U.S. 156, 174-175 (1974). The Notice clearly described the boundaries of the Class definition, the basis for the lawsuit, the terms and provisions of the Settlement, the remedies available to Class Members, the proposed method for benefit distribution, the proposed amount of the Named Plaintiff service award, and the requested amount for attorneys' fees and costs. The Notice described the proposed Settlement with enough specificity to allow each Class Member to make an informed choice whether to (a) accept and participate in it; (b) opt out of it to preserve the right to bring a separate action; or (c) object to it. The Notice explained the procedure by which a Class Member could take any such action. Finally, the Notice provided the schedule for the Final Fairness Hearing, and informed Class members how to obtain additional information from Class Counsel or Logitech about the Settlement.

Accordingly, the Court finds and concludes that the method and content of the Notice satisfied all applicable legal requirements.

## II. THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

When considering a motion for final approval of a class action settlement under Rule 23, the court's inquiry is whether the settlement is "fair, adequate, and reasonable." *Class*

*Plaintiffs v. City of Seattle*, 955 F.2d 1268 1276 (9th Cir. 1992). A settlement is fair, adequate, and reasonable when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *Manual for Compl. Litig.*, Fourth, § 30.42 (2004). The decision to approve or reject a proposed settlement is committed to the court's sound discretion. *See City of Seattle*, 955 F.2d at 1276.

In affirming the settlement approved by the trial court in *City of Seattle*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotations and citations omitted). The district court's ultimate determination "will involve a balancing of several factors," which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement.

*Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

This Court begins its analysis with a presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation. *See In re Consolidated Pinnacle West Securities*, 51 F.3d 194, 197 n.6 (9th Cir. 1995). Each of these factors is present here: Counsel for both parties have extensive experience in complex litigation, and they reached the Settlement only after vigorous litigation and extensive arm's-length negotiation about the specific terms of the Settlement.

Further, the Court has considered each of the factors set forth in *City of Seattle* to determine whether the proposed Settlement warrants final approval. The Court finds, based on the record submitted, that the Settlement is fair, adequate, and reasonable in light of, *inter alia*, the following factors:

### A. The Value Of The Settlement, And The Substantial Benefits It Provides To Class Members

The Settlement provides a new or returned H890 remote control device equipped with Z Wave for any eligible Class member who reports disappointment with the H1000's lack of Z Wave. The Settlement provides these benefits to the Settlement Class even though Logitech has at all times disputed, and continues to dispute, Plaintiff's allegations in this lawsuit and to deny any liability for any of the claims that have been or could have been alleged by Plaintiff or other members of the Settlement Class. In light of the relief available to Class members with qualified claims, the Court is satisfied that the value of the Settlement weighs in favor of final approval.

### B. The Risks Inherent In Continued Litigation

In assessing the fairness, adequacy, and reasonableness of the Settlement, this Court has balanced the immediate and certain benefits of the Settlement against the risks of continued litigation against Logitech. While Class Counsel believe that Class members' claims are meritorious and that they could succeed at trial, they recognize that liability and damages issues—and the outcome of any appeals that would likely follow if the Class were successful at trial—present substantial risks and delays for Class member recovery. Such risks and delays must be considered in assessing the fairness of this Settlement, which guarantees a recovery that is not only substantial, but also certain and immediate, eliminating the risk that Class members would be left without any recovery from Logitech at all.

Here, the Court finds that the Settlement provides timely and substantial relief, without the attendant risks of continued litigation. In light of the serious potential risks present in this action, the Settlement provides a fair, adequate and reasonable result.

### C. The Investigation Conducted Before Time of Settlement

By the time the parties reached the Settlement, they had compiled sufficient information to assess the strengths and weaknesses of their respective cases. Specifically, Class Counsel had investigated Plaintiff's misrepresentation claim through independent research of Logitech's historical advertising materials. The Named Plaintiff responded to and served discovery, and the parties engaged in contested motion practice. By the time the Settlement was

reached, the parties had sufficient legal and factual bases to make a thorough appraisal of the adequacy of the Settlement.

### D. The Terms And Conditions Of The Proposed Settlement

The Settlement provides a product replacement for any eligible Class member disappointed with the lack of Z Wave in the H1000 remote. The straightforward claims process applies equally to all Class members, and assistance was available throughout the claims period—from Class Counsel and Logitech—for Class members in need of help submitting a claim to establish eligibility for relief under the Settlement.

### E. The Views of Class Counsel

When assessing the fairness of a proposed settlement, the court must consider the views and experience of counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This Court finds that this action has been prosecuted by experienced and competent counsel. Both parties are represented by attorneys with extensive experience in complex matters throughout the United States. Based on a review of Class Counsel's credentials and their bases for supporting the Settlement, this Court finds that the experience and opinions of counsel for all parties favor final approval of the Settlement.

### F. The Expense And Likely Duration Of Litigation In The Absence Of A Settlement

Another factor courts consider in assessing the fairness of settlements is the complexity, expense, and likely duration of the litigation in the absence of settlement. *City of Seattle*, 955 F.2d at 1291. Consumer class actions are expensive and time-consuming to prosecute. Continued litigation of this action against Logitech would likely be expensive and lengthy. The Settlement avoids a lengthy trial that likely would have involved testimony by numerous witnesses and experts. It also avoids the likely appeal process that could continue for many months or even years after entry of a judgment.

The Court has balanced the benefits of the Settlement against the expense and delay involved in achieving an equivalent or more favorable result from Logitech at trial, and, in light of the issues involved, finds that the Settlement guarantees a substantial recovery for the

858913.2 - 6 - [Proposed] Order Granting Final Approval of Class Action Settlement; Case No. 08-Cv-02041

Class while eliminating the risk of trial and appeals.

### G. The Presence Of Good Faith And The Absence Of Collusion

Courts should also consider the presence of good faith and the absence of collusion on the part of the settling parties. 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.43 (4th ed. 2002). There is no indication of collusion or bad faith here, nor any allegations thereof. Furthermore, arm's-length negotiations conducted by competent counsel are prima facie evidence of fair settlements. *In re Consolidated Pinnacle West Securities*, 51 F.3d at 197, n.6. The proposed Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are highly familiar with class action litigation in general and with the legal and factual issues of this case in particular. This Court is satisfied that the Settlement was reached in good faith without collusion.

### H. Class Members' Positive Reaction Supports Final Approval

This Court has also considered the response of the Class. As an initial matter, the Class Representative, Arthur Fulford, favors the Settlement. In addition, of the approximately 82,091 Class Members to receive Notice, only 12 (0.015 %) objected and 10 (0.012 %) opted out. Such an overwhelmingly positive reaction of the Class Members affected by the Settlement supports its approval.

A court may appropriately infer that a class action settlement is fair, adequate, and reasonable even when class members object to it. Indeed, a court may approve a class action settlement as fair, adequate, and reasonable even over the objections of a significant percentage of class members. *City of Seattle*, 955 F.2d at 1291-96 (upholding the trial court's grant of final approval over class member objections); *In re Wash. Pub. Power Supply System Sec. Litig.* (D. Ariz. 1989) 720 F. Supp. 1379, 1394 ("[A] settlement is not to be deemed unfair or unreasonable simply because a large number of class members oppose it."), *aff'd sub nom.*, *Class Plaintiff v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268. Here, none of the objections counsels against final approval.

### THE OBJECTIONS

This Court has considered each of the 12 objections and finds that they are without

merit and hereby overrules them. The theme of all of these objections is that the Settlement could have been "better" by providing different or additional relief. As the Ninth Circuit recognized in *Hanlon v. Chrysler Corp.*:

> Of course it is possible . . . that [a] settlement could have been better. But this possibility does not mean [a] settlement presented [is] not fair, reasonable or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion. In this regard, the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness. There [is] no disparate treatment between class members; all stood to benefit equally, a fact which lessens the likelihood that the named Plaintiff and their attorneys colluded with [the defendant] to increase their own recovery at the expense of the unnamed Plaintiff who Class Counsel had a duty to represent. No objector stepped forward and suggested that his or her personal claim was being sacrificed for the greater good and if any thought that was the case, they had the right to opt out of the class.

150 F.3d 1011, 1027 (1998).

Here, the objections center around 3 issues: (1) the use of the H890 as a replacement for the H1000 remote; (2) the one-claim-per-household limit; and (3) the burden of proof for eligible claims.

As this Court is aware from its oversight throughout the litigation of this matter, the Settlement presented here was reached after more than a year of intensely adversarial litigation, and—like any settlement must—reflects both the strengths and weaknesses of Plaintiff's claims and Logitech's defenses. As with any compromise, both sides were required to make some concessions to reach closure and both sides have determined that the benefits of acceding to such concessions outweigh the risks of further litigation. For these reasons, and for the specific reasons set forth below, the objections are overruled.

Objectors Bessman, Cooper, Dammer, Fieldman, Gardner, Nelson, Proffitt, and Whitney object to the form of relief contemplated by the Settlement Agreement. While they state different alternatives, each of these Objectors argues that the H890 replacement product contemplated by the Settlement is somehow insufficient. The Court disagrees.

Objectors Bessman and Proffitt seek cash reimbursement that is not contemplated

by the Settlement Agreement. Objector Bessman states that she would prefer a cash refund of the purchase price. Objector Proffitt argues that the Settlement is inadequate because it does not provide reimbursement for her purchase of an extended warranty and the cost of service calls. The Settlement reasonably provides a replacement remote that has the Z Wave feature that was missing from the H1000. Considering the specific claims alleged and the risks inherent in proceeding to trial, the Settlement reasonably limits relief to a replacement device, and these objections are overruled.

Objectors Cooper, Dammer, Gardner and Whitney argue that qualified claims should be fulfilled with the H1100, or "Harmony One," remote instead of the H890. The objective of the Settlement is to replace H1000 remotes, which do not have Z Wave, with a replacement remote that does have Z Wave. The H890 is the only remote control in Logitech's current inventory that has Z Wave. The H1100/Harmony One does not have the Z Wave feature. Thus, while the H1100/Harmony One is the newest and most expensive universal remote Logitech currently sells, that product cannot make whole a customer who purchased the H1000 for the Z Wave feature and was disappointed by the H1000's lack of Z Wave. Because the H1100/Harmony One does not have the Z Wave feature, it is not an appropriate replacement. Objections requesting a replacement product other than the H890 are overruled.

Objectors Fieldman and Nelson additionally argue that returned H890s should not be used to fulfill qualified Settlement claims. Logitech has an inventory of 2,000 new H890s, which will be used to fulfill the first 2,000 qualified claims. To the extent that additional qualified claims have been received, Logitech will fulfill those claims with returned H890s. Logitech has represented to this Court that any returned H890 used for fulfillment of Settlement claims will operate as new. In addition, Logitech has agreed to extend to all returned H890s distributed under this Agreement its standard 1-year Limited Hardware Warranty and product support programs that are available for H1000s. The H890 is the only product in Logitech's current inventory that includes the Z Wave feature at issue in this case. Thus, the H890 is the only appropriate replacement device for qualified claims. Because Logitech has ceased manufacture of the H890, the supply of new H890 devices is limited. That supply will be

exhausted on a first come-first served basis to Class members who submit qualified claims. The returned H890s, which, Logitech has represented, perform as new and are protected by Logitech's standard warranty, are the only reasonable product replacement for later-received qualified claims. The Objections to the use of returned H890s to fulfill qualified Settlement claims are overruled.

Objectors Crawford and Harper object to the Settlement term that limits Class members to one claim per household. During the course of settlement negotiations, the parties to this action agreed to limit fulfillment of claims to one per household in recognition of Logitech's reasonable concern regarding fraudulent claims. Objections on these grounds are overruled.

Objectors Gilbert and Guilles object to the fact that Class members must provide an itemized receipt or the H1000 device as proof of purchase. Guillies' objection is moot , because Logitech, as explained in the Declaration of Philip S. Warden, filed February 19, 2010, was able to verify Guillies' purchase of the H1000, and his claim has been allowed. With respect to Gilbert's objection, where a claimant who possesses but does not wish to provide the H1000, the Settlement, by requiring documentation of the purchase of an H1000, creates a reasonable barrier to entry that minimizes the incentive and opportunity for fraudulent claims or claims by persons who are not disappointed by the lack of Z Wave in the H1000 device. Objection on this ground is overruled.

The Court finds the overwhelming non-opposition to and participation in the Settlement are strong indications of Class Members' support for the Settlement as fair, adequate, and reasonable.

### III. CLASS COUNSEL SEEK REASONABLE FEES

One final matter for the Court to consider in granting final approval to the Settlement is the issue of attorneys' fees and costs. The Court has considered and awarded Class Counsel's attorneys' fees and costs by separate Order.

//

//

//

* * *

Accordingly, the entire matter of the proposed Settlement having been duly noticed, and having been fully considered by the Court,

**IT IS HEREBY FOUND, ORDERED, ADJUDGED AND DECREED THAT:**

1. Unless otherwise provided herein, all capitalized terms in this Order shall have the same meaning as set forth in the Revised Class Action Settlement Agreement (the "Settlement Agreement"), previously filed with this Court on October 15, 2010.

2. The Court finds that notice to the Settlement Class has been completed in conformity with the Preliminary Approval Order. The Court finds that this notice was the best notice practicable under the circumstances, that it provided due and adequate notice of the proceedings and of the matters set forth therein, and that it fully satisfied all applicable requirements of law and due process.

3. The Court finds it has subject matter jurisdiction over all claims asserted in the Second Amended Complaint and personal jurisdiction over the parties and all members of the Settlement Class.

4. The settlement of this class action on the terms set forth in the Settlement Agreement is approved as being fair, adequate and reasonable in light of the degree of recovery obtained in relation to the risks faced by the Settlement Class in litigating the claims. The Settlement Class is properly certified as a class as part of this Settlement. The relief with respect to the Settlement Class is appropriate, as to the individual members of the Settlement Class and as a whole.

5. The Settlement is binding on all members of the Settlement Class. The Settlement Class is defined as: any individual who owns or owned an H1000, while residing in the United States at any time from January 21, 2007 through October 15, 2009, the date of preliminary approval by the Court, which H1000 was marketed, distributed, and sold by Logitech in the United States at any time prior to the execution of this Settlement. Notwithstanding the above, the "Settlement Class" or "Class" shall not include: (i) all residential end-users who submitted a warranty claim that was honored prior to the Effective Date; (ii) Logitech's officers,

directors, employees, agents, counsel and their assigns; (iii) all persons who have already settled or otherwise compromised or released their H1000 Claim; (iv) all persons who elect to Opt-Out; and (v) any judge in the United States District Court for the Northern District of California.

6.  All members of the Settlement Class are bound by the terms of the Settlement Agreement. As of the Effective Date, all members of the Settlement Class shall conclusively be deemed to have released all settled claims as described in the Settlement Agreement, which provides: "Upon the Effective Date, Plaintiff and each Settlement Class Member, and their respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf with respect to any H1000 manufactured, marketed and sold by the Defendant, shall conclusively be deemed to have fully, finally and forever released, relinquished and discharged the Released Parties from and against any and all liability for the Released Claims. Released Claims shall not include claims for personal injury, wrongful death, emotional distress or property damage."

7.  As of the Effective Date, all members of the Settlement Class are hereby forever barred and enjoined from commencing, prosecuting or continuing to prosecute, either directly or indirectly, in this or any other jurisdiction or forum, any of the claims that are released by this settlement or barred by the entry of the judgment in this action.

8.  Neither this Order nor any aspect of this Settlement is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant. In particular, and without limiting the generality of the foregoing, nothing in this Order or in this Settlement shall be offered or construed as an admission of, or evidence of, liability, wrongdoing, impropriety, responsibility or fault whatsoever by Defendant or its employees and agents. In addition, and also without limiting the generality of the foregoing, nothing about this Order or the Settlement shall be offered or construed as an admission or evidence of the propriety or feasibility of certifying a class in any other action for adversarial, rather than settlement, purposes.

9. The Clerk shall enter final judgment dismissing this action on the merits with prejudice and without costs or attorney fees to any party except as otherwise provided in this Court's Order Granting Class Counsel's Application For Award of Attorneys' Fees and Costs and Service Award to the Named Plaintiff. The claims that are thereby dismissed shall include all claims encompassed by the release set out in the Settlement Agreement.

10. The dismissal of this case is without prejudice to the rights of the parties to enforce the terms of the Settlement Agreement and the rights of Class Counsel to seek attorney fees, costs, and service award to the named Plaintiff as provided in the Settlement Agreement. Without affecting the finality of this Order, or the judgment to be entered pursuant hereto, in any way, the Court retains jurisdiction over this matter for purposes of resolving any disputes which may arise under the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: March 5, 2010

_____
The Honorable Maxine M. Chesney
UNITED STATES DISTRICT JUDGE